UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kimberly Brinkman,   Civ. No. 19-2981 (PAM/TNL)

    Plaintiff,

v.   **MEMORANDUM AND ORDER**

Sprinkler Fitters Local #417,
Summit Fire Protection Co., and
Gilbert Mechanical Contractors Inc.,

    Defendants.

---

This matter is before the Court on Defendants' Motions to Dismiss. For the following reasons, Defendant Sprinkler Fitters Local #417's Motion is granted, Defendant Gilbert Mechanical Contractor's Inc.'s Motion is granted, and Defendant Summit Fire Protection Co.'s Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Kimberly Brinkman is a sprinkler-fitter "journeyman." She sued her union, Defendant Sprinkler Fitters Local #417 ("Local 417"), and two previous employers, Defendant Summit Fire Protection Co. ("Summit") and Defendant Gilbert Mechanical Contractors, Inc. ("Gilbert"), for alleged sex discrimination and retaliation under Title VII. 42 U.S.C. § 2000e, et seq. The Complaint states that because of the alleged discrimination, Brinkman was without work for a period of years.

Brinkman has brought two prior sex-discrimination and retaliation lawsuits. On May 2, 2017, Brinkman's Title VII claims against Local 417 and a different previous employer were dismissed with prejudice because the Complaint was not filed within 90

days after the Equal Employment Opportunity Commission ("EEOC") issued its right-to-sue letter.  Brinkman v. Nasseff Mech. Contractors Inc., et al., 251 F. Supp. 3d 1266 (Kyle, J.).[1]  The court declined to exercise supplemental jurisdiction over Brinkman's Minnesota Human Rights Act claims, so the state-law claims proceeded in Hennepin County, where they were dismissed on May 30, 2017, and November 17, 2017, as untimely.  Brinkman v. Nasseff Mech. Contractors Inc., et al., No. 27cv17-8508, 2017 WL 11112445, at *1 (Minn. Dist. Ct. Nov. 17, 2017).  Brinkman did not appeal her claims against Local 417.  Brinkman v. Nasseff Mech. Contractors, Inc., No. 27cv17-8508, 2018 WL 6735447, at *2 n.1 (Minn. Ct. App. Dec. 24, 2018).

Defendants move to dismiss the Complaint under Rules 12(b)(1) and (b)(6), contending that many of Brinkman's allegations are administratively unexhausted with the EEOC or are time barred.  Summit and Local 417 argue that the Complaint was untimely filed and thus that the Court lacks jurisdiction to hear Brinkman's claims.   Gilbert joins in Summit's Motion, and also filed its own Motion to partially dismiss the sex-discrimination claim and completely dismiss the retaliation claim against it.

**DISCUSSION**

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).  When a defendant challenges the complaint on its face, the Court reviews the pleadings and affords

---

[1] The Complaint in that case was filed on the ninety-fourth day after the receiving the EEOC's right-to-sue letter.  Brinkman, 251 F. Supp. 3d at 1272.

the plaintiff the same protections that it would receive on a Rule 12(b)(6) motion to dismiss. See Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). The Court takes the factual allegations as true and will only dismiss a complaint if the plaintiff fails to allege an essential element for subject matter jurisdiction.  See Titus, 4 F.3d at 593.

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim.  Iqbal, 556 U.S. at 678.  At this stage, the Court assumes the allegations in the Complaint are true and views them in the light most favorable to Brinkman.  See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).

Defendants assert that the Complaint was untimely filed because the EEOC allows a plaintiff 90 days after receipt of a right-to-sue letter to file a complaint.[2]  Brinkman filed

---

[2] Summit explains that Brinkman's counsel asked the EEOC to delay issuing the right-to-sue letter, and consequently Brinkman's counsel "manipulated the agency to delay issuance of a written NRTS."  (Summit Supp. Mem. (Docket No. 28) at 19, 28.)  Not only is this a matter outside of the pleadings, but how Brinkman's counsel exerts such control over the

her Complaint on day 91. She argues that Federal Rule of Civil Procedure 6(a)(1) saves her Complaint, because the ninetieth day, November 24, 2019, was a Sunday and she filed the following Monday, November 25. The Rule for computing time states that "if the last day of the period [to file] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Defendants argue that Title VII sets a 90-day limit and is silent as to an extra day; therefore, the Complaint is untimely filed. Yet Defendants concede that the law is unsettled in this area and they do not cite any precedent from the Eighth Circuit Court of Appeals stating that Rule 6(a)(1)(C) does not apply in this type of Title VII case. Therefore, the Court finds that the Complaint was timely filed.[3]

## A. Sex Discrimination

"Under federal law, an employer may not discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." Liles v. C.S. McCrossan, Inc., 851 F.3d 810, 821 (8th Cir. 2017) (internal quotation omitted).

---

EEOC is not mentioned. The Court finds this argument to be without merit.

[3] Defendants also assert that Brinkman's Opposition Memorandum was untimely filed. Brinkman's Memorandum was due on June 9, 2019. At 12:01 AM on June 10, she filed a Response but labeled it in ECF as a "motion." The Court contacted her and asked her to refile it as a "memorandum." Brinkman refiled and relabeled the document in ECF on June 10, and also added to the filing's substance. Although the Court does not look kindly on submitting a revised document without leave to do so, the June 10 additions to the Memorandum do not change Motions' results. The Court will not disregard Brinkman's Memorandum on this ground.

Brinkman's EEOC charges against Defendants allege a Title VII claim for sex-discrimination in employment under 42 U.S.C. § 2000e, et seq.  A plaintiff must exhaust administrative remedies by filing a discrimination claim with the EEOC before a Title VII action can be commenced.  Brown v. Ameriprise Fin. Servs., Inc., 707 F. Supp. 2d 971, 974 (D. Minn. 2010) (Kyle, J.).  The EEOC must have the first opportunity to investigate discriminatory practices and seek to obtain voluntary compliance.  Id. at 975 (citing Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)).  Allowing a complaint to contain allegations beyond those cited in the underlying EEOC charge deprives the opposing party of notice of the charge and limits the EEOC's investigatory and conciliatory roles.  Id. (citing Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 688 (8th Cir. 1998)).  A complaint need not mirror the administrative charge and may restate the claim liberally, but the EEOC charge must not be read too broadly to create a claim that did not previously exist.  Id.

A Title VII discrimination charge must be filed within 300 days of the alleged unlawful occurrence.  Holland v. Sam's Club, 487 F.3d 641, 643 (8th Cir. 2007) (citing 42 U.S.C. § 2000e–5(e)(1)).  Title VII plaintiffs are deemed to have exhausted any claim that is "like or reasonably related to the substance" of the EEOC charge.  Wallin, 153 F.3d at 688 (quotation omitted).

### 1. Local 417

Brinkman's EEOC charge against Local 417, filed in August 2017, states that the alleged sex discrimination started in August 2016 and ended November 11, 2016.  (Local

417 EEOC Charge (Docket No. 21-2) at 55-56.)[4]  The charge alleges that Local 417 discriminated against Brinkman by failing to file a grievance after she suffered discrimination at a worksite run by Gilbert at Gustavus Adolphus College.

The CBA limits Local 417 to working with employers in Anoka, Dakota, Hennepin, Ramsey, Scott, and Washington Counties.  Gustavus Adolphus is in Nicollet County.[5] Therefore, because Nicollet County was not covered under the CBA, Local 417 did not have authority to file a grievance regarding any discrimination at the Gustavus Adolphus jobsite.[6]  The Complaint acknowledges this, stating that "[t]he [Gilbert] project was in the jurisdiction of another sprinkler fitter local, Local 669."  (Compl.  (Docket No. 1) ¶ 38.) Why it was discriminatory for Local 417 to fail to file a grievance it had no jurisdiction to file is left to the imagination.

Additionally, as Local 417 argues, any claim related to the Gustavus Adolphus project or other conduct that allegedly occurred before March 2017 should have been brought in Brinkman's previous state and federal lawsuits.  See Williams, 21 F.3d at 222. The Complaint also lists other grievances with Local 417, but fails to identify when those alleged events occurred.  Further, the vague allegations in the Complaint were not included

---

[4] In all three EEOC charges, Brinkman checked a box on the charge forms that alleged a "continuing action."  But the allegations in her charges do not elaborate on the supposed "continuing" nature of the discrimination.

[5] The EEOC Charge mistakenly states that Gustavus Adolphus is in Mankato, Minnesota. Regardless, Mankato is also not covered under the CBA.

[6] The EEOC Charge states that Brinkman sought help related to Gilbert's alleged discrimination from Local 417 in October 2017.  Because the Charge was filed in August 2017, it appears that Brinkman intended to state that she approached Local 417 in October 2016.

in the EEOC charge against Local 417 and are therefore not properly before the Court. See VanDyke v. Minneapolis Police Dept., No. 14cv224, 2015 WL 138060, at *4-5 (D. Minn. 2015) (Nelson, J. adopting R. & R. of Rau, M.J.) ("To allow a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.") (quoting Williams, 21 F.3d at 223)). Brinkman's claims against Local 417 must be dismissed.

  **2. Gilbert**

The August 2, 2017, charge claims that Gilbert's discrimination occurred from August 2016 to November 11, 2016, but alleges no conduct after October 6, 2016, when she was laid off. (Gilbert EEOC Charge (Docket No. 25-1) at 7.)

The Complaint discusses two incidents on Gilbert worksites that were not mentioned in the EEOC charge, and are therefore administratively unexhausted. See VanDyke, 2015 WL 138060, at *4-5. First, Brinkman alleges that was fired from a Gilbert job in 2015 because she was told that the quota for female and diverse workers had been met. (Compl. ¶¶ 183-84.) This allegation is time-barred and not mentioned in her EEOC charge. Second, the Complaint alleges that she was discriminated against at a Gilbert jobsite at the YWCA in Minneapolis in August 2016. Although Brinkman explains that allegation more fully in her Complaint, the EEOC charge only states, "In August of 2016, I was hired by Gilbert Mechanical Company to work as a sprinkler fitter on a construction project for the YWCA in Minneapolis." (Gilbert EEOC Charge at 2.) While August 2016 was within the time period outlined in the charge, Brinkman mentions no conduct, let alone

discriminatory conduct, that would have put the EEOC on notice to investigate her experience at the YWCA site.  Thus, this portion of her sex-discrimination claim against Gilbert is dismissed.

Brinkman's sole timely allegation against Gilbert that is included in the EEOC charge occurred at project at Gustavus Adolphus College in the fall of 2016.  Gilbert has not sought dismissal of this portion of Brinkman's claim, and accordingly it survives.

The Complaint also alleges sex-discrimination by Gilbert after November 1, 2016, but these allegations were not included in Brinkman's EEOC charge.  Therefore, Gilbert's Motion is granted as to Brinkman's claim arising out of anything other than conduct at the Gustavus Adolphus worksite in 2016.

### 3. Summit

Brinkman's EEOC charge against Summit, filed September 13, 2016, references sex-discrimination that she experienced at two Summit jobsites—the Minnesota Capitol and US Bank Stadium.[7]  The charge states that Summit's discriminatory conduct occurred from 2002 through September 12, 2016, and Brinkman notes that the conduct was "ongoing."  (Summit EEOC Charge (Docket No. 29-1) at 9.)

The charge states that Brinkman worked at the Capitol from June to October 2015 and again from December 2015 to March 2016.  At that job, she claims that she was: (1) assigned apprentice-level work, while male apprentices were assigned journeyman-level work, (2) not given the necessary tools to do the work and was forced to work alone, while

---

[7] The Complaint also references discrimination at TCF Bank Stadium, a Summit jobsite, in 2008, but that was not mentioned in the EEOC charge.

men worked together; and (3) subject to "degrading" behavior from coworkers. (Id.) She further asserts that she helped advocate for other women who complained of discrimination.

Brinkman explains that she was assigned to the US Bank Stadium project for a short time in October 2015, and it seems that she remained there through December, when she returned to the Capitol project. She claims that her foreman, Bill McMannus, would not communicate with her in the same way that he did with the male workers and that he even described her to other coworkers as a "sue-happy bitch." (Id. at 10.)

When Brinkman returned to the Capitol project, she claims that the foreman, Steve Sangren, told her that they did not want the problems with her that had occurred at US Bank Stadium. She alleges that when a co-worker complained about her, Sangren told her that the men did not respect her. He offered to reassign her and she refused. Brinkman asked Sangren what he would do if his wife was treated the way she was, and Sangren responded that his wife would quit. (Compl. ¶ 170.) He said that things likely would not change for Brinkman. (Id. ¶ 171.) Brinkman told Sangren that she would file an EEOC complaint if he failed to do something about the discrimination she experienced. Three days later, on March 18, 2016, Sangren laid off Brinkman because they were "caught up" on the project, and told her, "[w]ith all the stuff that's going on, it's probably best." (Id. ¶ 173.) Brinkman has not since received any work from Summit.

Brinkman's allegations sufficiently set forth her prima facie case: (1) she was a member of a protected group, (2) she was qualified to do the work at the Capitol, (3) she suffered an adverse employment action, and that "the circumstances permit an inference of

9

discrimination." Banks v. Deere, 829 F.3d 661, 666 (8th Cir. 2016) (quoting Xuan Huynh v. U.S. Dep't of Transp., 794 F.3d 952, 958 (8th Cir. 2015)).  Accordingly, Summit's Motion is denied as to its conduct at the Capitol project in 2016.

**B.     Retaliation**

To establish retaliation in violation of Title VII, Brinkman must demonstrate that she engaged in protected activity and suffered an adverse employment action as a result. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013) (noting that a Title VII retaliation plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").  Title VII defines protected activity as opposing an unlawful employment practice or making a charge, testifying, or participating in an investigation or other proceeding under Title VII.  42 U.S.C. § 2000e–3(a).

**1.     Local 417**

Brinkman's August 2017 EEOC charge explains that she previously sued Local 417 and alleges that she has "essentially been blackballed from any jobs as a Local 417 sprinkler fitter.  This pattern of gender-based discrimination and harassment that continues to this day." (Local 417 EEOC Charge at 55.)  Without any specifics, this sweeping allegation is insufficient to state an actionable retaliation claim.  A similar conclusory allegation in the Complaint—that she received no work from Local 417 from 2017 until June 2019—is administratively unexhausted, as she did not put the EEOC on notice of this claim.  See Wallin, 153 F.3d at 688.  The EEOC charge details the protected activity of raising complaints to Local 417 in October 2016, the same month that Brinkman filed her first Title VII suit against Local 417.  Thus, those claims should have been brought in

10

Brinkman's prior suit. See Williams, 21 F.3d at 222. Brinkman cannot breathe new life into stale allegations. The EEOC charge does not mention any other discrete acts of retaliation by Local 417. Therefore, Local 417's Motion is granted as to the retaliation claim.

### 2. Gilbert

Construing everything in the Complaint as true, Brinkman fails to allege that Gilbert knew of any protected activity. Although the EEOC charge against Gilbert describes general, historical retaliation against Brinkman by Local 417 and "other companies," it does not mention Gilbert or even imply that Gilbert should have known about any of her prior complaints, EEOC charges, or lawsuits. (Gilbert EEOC Charge at 7.) Further, Brinkman fails to allege that any protected activity resulted in her suffering an adverse-employment action by Gilbert. Thus, the retaliation claim against Gilbert is without merit and Gilbert's Motion is granted as to this claim.

### 3. Summit

In the EEOC Charge against Summit, Brinkman alleges that Summit retaliated against her at both the Capitol and US Bank Stadium projects because she generally "objected to hostility toward [her] based on [her] gender" and had filed EEOC charges in 2014, which resulted in her earlier lawsuits against different companies. (Summit EEOC Charge at 9-10.) McMannus, the foreman at the US Bank project, allegedly described Brinkman to other workers as a "sue-happy bitch." (Id. at 10.) However, equating Brinkman's reputation for being litigious to an actionable retaliation claim against Summit, a party not involved in the earlier lawsuits, is tenuous—especially when Brinkman does

11

not explain how or what Summit knew about the earlier EEOC Charges and lawsuits. Moreover, Summit hired Brinkman after it apparently knew, based on McMannus's statement, that she had brought previous gender-based lawsuits.

Brinkman also alleges, however, that she was fired from the Capitol project in March 2016 after she asked Sangren to do something about the discrimination she was facing on the jobsite. As described in her EEOC charge, Brinkman engaged in the protected activity of complaining to Sangren about discrimination she experienced at the Capitol project and suffered the adverse-employment action of termination three days later. (Id. at 9.) At this preliminary stage of the litigation, Brinkman has alleged sufficient facts for this aspect of the claim to survive a Rule 12(b)(6) Motion. Summit's Motion as to the retaliation claim is therefore granted in part and denied in part.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1. Local 417's Motion to Dismiss (Docket No. 12) is **GRANTED**;

2. Gilbert's Partial Motion to Dismiss (Docket No. 23) is **GRANTED**; and

3. Summit's Motion to Dismiss (Docket No. 27) is **GRANTED in part and DENIED in part**.

Dated: July 6, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge