## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Kimberly Brinkman,                              Case No. 19-cv-2981 (KMM/TNL)

       Plaintiff,

v.                                              **ORDER**

Sprinkler Fitters Local #417,[1]
Summit Fire Protection Co., and
Gilbert Mechanical Contractors, Inc.,

       Defendants.

---

Lisa C. Stratton, 2369 Bourne Avenue, St. Paul, MN 55108 (for Plaintiff);

Bruce J. Douglas and Colin H. Hargreaves, Ogletree Deakins Nash Smoak & Stewart PC, 225 South Sixth Street, Suite 1800, Minneapolis, MN 55402 (for Defendant Summit Fire Protection Co.); and

Andrew E. Tanick and Jody A. Ward-Rannow, Ogletree Deakins Nash Smoak & Stewart PC, 225 South Sixth Street, Suite 1800, Minneapolis, MN 55402 (for Defendant Gilbert Mechanical Contractors, Inc.).

---

## I. Introduction

    This matter comes before the Court on the following discovery motions: (1) Defendant Summit Fire Protection Co.'s ("Summit") Motion to Compel Discovery, ECF No. 62; (2) Defendant Gilbert Mechanical Contractors, Inc.'s ("Gilbert") Motion to Compel Discovery, ECF No. 68; (3) Plaintiff's Motion to Compel Discovery – Summit Fire Protection, ECF No. 73; (4) Plaintiff's Motion to Compel Discovery – Gilbert

---

[1] Defendant Sprinkler Fitters Local #417 was previously dismissed from this litigation. *See generally* ECF No. 38.

Mechanical, ECF No. 74; (5) Summit's Motion for Protective Order to Quash Plaintiff's Notice of Rule 30(b)(6) Deposition, ECF No. 91; (6) Plaintiff's Motion to Compel Testimony and Documents from Non-Party William McManus, ECF No. 113; and (7) Plaintiff's Motion to Compel Discovery from Summit Fire Protection Co. and Gilbert Mechanical Contractors, Inc., ECF No. 119.

## II. Legal Standard

These motions all implicate the Court's broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Some threshold showing of relevance must be made[, however,] before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Further, "[t]he parties and the court have

a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Id.* (quotation omitted); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d 742-43.

### III. Summit's Motion to Compel Discovery, ECF No. 62; Gilbert's Motion to Compel Discovery, ECF No. 68; Plaintiff's Motion to Compel Discovery – Summit Fire Protection, ECF No. 73; and Plaintiff's Motion to Compel Discovery – Gilbert Mechanical, ECF No. 74

Prior to the hearing on these motions, the Court directed the parties to "file a single, joint letter, indicating which if any of the discovery disputes identified in the parties' motions to compel have since been resolved." ECF No. 86 (citations omitted). The parties met and conferred and filed the joint letter prior to the hearing. *See generally* Joint Ltr., ECF No. 87. Notwithstanding the parties' compliance with the Court's directive, the Court frustratingly found itself down amongst the weeds, trying to discern what discovery still in fact remained in dispute. Consistent with representations made during the hearing, Plaintiff was directed to "certify her responses" to certain discovery requests served by Summit on or before June 1, 2021. ECF No. 97. Summit and Plaintiff were then directed to file a joint

letter "indicating whether such certification" had been completed.   ECF No. 97; *see generally* Post-Hearing Ltr., ECF No. 101.

Based on the parties' pre-hearing joint letter, the hearing, and the post-hearing letter, the Court addresses the following remaining discovery.

### A. Summit & Gilbert's Motions

Summit filed a motion to compel, which Gilbert joined on three issues: Plaintiff's initial disclosures under Rule 26(a)(1); Plaintiff's medical records; and sanctions for Plaintiff's "failure to reasonably participate" in the settlement conference held by the undersigned, resulting in "unnecessary costs associated with attending."   Summit's Mem. in Supp. at 2, ECF No. 64; *see* Gilbert's Mem. in Supp. at 1 (joining Summit's motion as to three issues), ECF No. 70.   The Court begins with these three issues and then turns to the Summit-only issues.

### 1. Initial Disclosures

Summit and Gilbert move for the production of Plaintiff's initial disclosures under Rule 26(a)(1).   *See* Fed. R. Civ. P. 37(a)(1), (3)(A).   Rule 26(a)(1) sets forth certain initial disclosures that "a party *must*, *without awaiting a discovery request*, provide to the other parties."   Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).   These initial disclosures are to be provided "at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order."   Fed. R. Civ. P. 26(a)(1)(C).   The Pretrial Scheduling Order provided that "[a]ll pre-discovery disclosures required by Fed. R. Civ. P. 26(a)(1) shall be completed on or before November 1, 2020."   ECF No. 47 at 1.

The record reflects that Summit alone reminded Plaintiff of the need to provide

initial disclosures no fewer than *five* times between November 2020 and February 2021. *See, e.g.*, Ex. B at 4, 6, 9, 15, 20 to Decl. of Bruce J. Douglas, ECF No. 65-1.[2] At the hearing, Plaintiff acknowledged that she had not yet provided her initial disclosures despite them being due more than six months ago, and apologized.

There is no reasonable explanation for Plaintiff's delay in providing the basic information required under Rule 26(a)(1). Summit and Gilbert's motions are granted on this issue. **To the extent she has not done so already, Plaintiff shall provide the initial disclosures required by Rule 26(a)(1) within seven days from the date of this Order.**

Under Rule 37(a)(3)(A), "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Summit requests its attorney fees and costs in bringing this motion given the number of times it has had to raise the issue of initial disclosures with Plaintiff.[3] The Court finds $1,000 to be an appropriate sanction for non-compliance with Rule 26(a)(1)'s mandatory requirements. **This sanction shall be paid by Plaintiff to Summit within 30 days from the date of this Order.**

## 2. Medical Records

Initially, Plaintiff indicated that she was seeking damages for "garden-variety emotional distress and d[id] not intend to introduce evidence of or expert testimony regarding any diagnosis of a specific psychiatric or psychological disorder." Ex. 2 at 11 to Decl. of Andrew E. Tanick, ECF No. 71-1; *see* Ex. 2 at 11 to Tanick Decl. ("Plaintiff does

---

[2] The Court uses the pagination generated by the CM/ECF electronic filing system.

[3] Because of its reliance on Summit's memorandum of law, Gilbert does not seek an award of attorney fees and costs in connection with its motion. Gilbert's Mem. in Supp. at 4.

not intend, however, to introduce evidence of a diagnosed psychiatric or psychological disorder or expert testimony regarding any disorder in this case; thus, Plaintiff has not placed her medical condition in controversy."); *see also* Ex. E at 3, 9-10 to Douglas Decl., ECF No. 65-1.  On April 1, 2021, Plaintiff disclosed the name of a licensed clinical psychologist whom she intended to call to opine on "the nature and cause(s) of Plaintiff's emotional distress damages and the impact of any contextual and/or organizational factors."  Ex. 3 at 21 to Tanick Decl., ECF No. 71-1; *accord* Ex. BB at 8 to Decl. of Colin H. Hargreaves, ECF No. 66-1.

Summit and Gilbert have moved to compel the production of signed releases for Plaintiff's medical records so that they may obtain her records directly from the providers. At the hearing, Plaintiff agreed that her medical records were relevant and discoverable and asserted that she had produced all mental health records, approximately 50 pages worth, by way of signing her providers' own releases, obtaining the records herself, and then producing the responsive records to Summit and Gilbert.  *See* Joint Ltr. at 3. Notwithstanding Plaintiff's production, Summit and Gilbert move to compel the production of the signed releases for the production of all medical records, not just those Plaintiff characterizes as relating to her mental health, and to confirm all such records have been produced.

The Court concludes that Summit and Gilbert are entitled to review Plaintiff's medical records bearing on any diagnosis or treatment for any mental, emotional, or psychological issues and the manifestations of any such mental, emotional, or psychological issues to the extent such records exist for the period between January 1, 2008

and the present.

First, Plaintiff's pursuit of damages for emotional distress does not alone give Summit and Gilbert "an unfettered right to pursue discovery into Plaintiff's entire medical history." *Walker v. Nw. Airlines Corp.*, No. 0cv-2604 (MJD/JGL), 2002 WL 32539635, at *5 (D. Minn. Oct. 28, 2002); *see, e.g.*, *Laabs v. Nor-Son, Inc.*, No. 20-cv-1399 (PAM/ECW), 2021 WL 1609184, at *13 (D. Minn. Apr. 26, 2021). It may very well be that there are no additional records beyond what Plaintiff has characterized as relating to her mental health and already produced.

Second, Rule 26(b)(1) requires the consideration of proportionality when resolving discovery disputes. Summit's Request for Production No. 14 seeks "[a]ll documents that relate in any way to [Plaintiff's] medical, emotional, physical, and/or psychological condition *at any time* in [Plaintiff's] life." Ex. E at 9 to Douglas Decl. (emphasis added). Gilbert's Request for Production No. 3 seeks "[a]ll documents that relate in any way to [Plaintiff's] emotional and/or psychological condition during or after [her] employment with Gilbert" as well as information during the last 10 years. Ex. 2 at 10 to Tanick Decl.

The Complaint alleges Plaintiff faced hostility as a female journey-level sprinkler fitter for approximately 20 years. *See, e.g.*, Compl. ¶¶ 33-227, ECF No. 1. In addition to the events underlying the instant litigation which took place between approximately June 2015 and October 2016, *see* Compl. ¶¶ 3, 5, 111-227, the Complaint describes instances of hostility and harassment Plaintiff experienced over this entire period as well as a prior lay-off by Summit in 2008, Compl. ¶¶ 58-65, and an ensuing approximately four-year period in which "Plaintiff had no jobs and no income," "lost her home to foreclosure," and "had

7

to rely on friends for a place to live," Compl. ¶¶ 72-74.  The Court the finds that the proportional time period for discoverable information relevant to Plaintiff's alleged emotional distress is January 1, 2008 through the present considering the pervasiveness of the hostility alleged to have been experienced by Plaintiff over these 20 years compared to the relatively short period in which she was employed by Summit and Gilbert.

Accordingly, the Court will grant Summit and Gilbert's motions in part with respect to Summit's Request for Production No. 14 and Gilbert's Request for Production No. 3 to the extent that, **on or before March 1, 2022**, Plaintiff shall execute and produce to Summit and Gilbert medical authorizations for all medical providers between January 1, 2008 and the present in connection with any diagnosis or treatment for any mental, emotional, or psychological issues and the manifestations of any such mental, emotional, or psychological issues.  Responsive records obtained pursuant to the authorizations shall be designated as "Confidential" under the existing Protective Order, ECF No. 51.  Further, in the absence of an attorney-eyes-only provision in the Protective Order, the Court will also modify Paragraph 4 of the Protective Order for purposes of these responsive records only and limit access to such responsive records to those individuals identified in Paragraphs 4(a), (b), (c), (d), and (g).  Summit and Gilbert's motions are otherwise denied with respect to Summit's Request for Production No. 14 and Gilbert's Request for Production No. 3.

### 3.  Settlement Conference

Summit and Gilbert assert that Plaintiff failed to participate in good faith in the April 12, 2021 settlement conference.  As argued by Summit, Plaintiff was unprepared to engage in a full and frank discussion of settlement during the required meet and confer prior to the

settlement conference, *see* ECF No. 48 at 3, and then unprepared for the settlement conference itself as demonstrated by Plaintiff's demand being made approximately five hours into the settlement conference. *See* Summit's Mem. in Supp. at 8-9; Gilbert's Mem. in Supp. at 2. Citing Federal Rule of Civil Procedure 37(a)(5)(A) and *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421 (D. Minn. 2012), Summit and Gilbert request that the Court award the attorney fees and costs they incurred in attending the unsuccessful settlement conference. Summit's Mem. in Supp. at 15; *see* Gilbert's Mem. in Supp. at 4 ("Gilbert further requests that the Court [o]rder Plaintiff to reimburse Gilbert for the fees it incurred in participating in the [s]ettlement [c]onference that Plaintiff sabotaged.").

Rule 37(a)(5)(A) governs payment of expenses when a motion to compel is granted. Fed. R. Civ. P. 37(a)(5)(A) ("If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses in making the motion, including attorney's fees."). It does not address a party's preparedness for a settlement conference or available sanctions in the event a party believes another party has failed to comply with a court order. *Cf., e.g.*, Fed. R. Civ. P. 37(b)(2) (sanctions for failure to obey discovery order), 41(b) (involuntary dismissal for failure to prosecute or to comply with Federal Rules of Civil Procedure or court order).

Nor is *Cargill* on point. *Cargill* involved a motion to compel discovery, in which the plaintiff requested that the defendant be ordered to provided complete responses to all interrogatories and requests for production of documents and that all objections be deemed

waived.  284 F.R.D. at 422, 424-28.  The plaintiff also requested that the defendant be sanctioned under Rule 37 because the defendant "lacked substantial justification to oppose [its] motion to compel." *Id.* at 429; *see id.* at 422, 424.  After setting forth the text of Rule 37(a)(5)(A), the magistrate judge went on to consider whether the defendant's "position was substantially justified or whether other circumstances ma[d]e an award of expenses unjust." *Id.* at 430; *see* Fed. R. Civ. P. 37(a)(5)(A)(ii) (substantial justification), (iii) (award of expenses unjust).  The magistrate judge ultimately found that the defendant "was not substantially justified in its failure to provide discovery" and there were "no other circumstances that ma[d]e an award of expenses unjust."  *Cargill*, 284 F.R.D. at 430. Accordingly, the magistrate judge "award[ed] [the plaintiff] its reasonable fees and expenses incurred in making its motion to compel" with briefing to follow on "what amount the award of fees and expenses should be." *Id.*  Thus, *Cargill* too does not address a party's preparedness for a settlement conference or available sanctions in the event a party believes another party has failed to comply with a court order.

Summit and Gilbert are represented by counsel and the Court will not make arguments for them.  Neither Rule 37(a)(5)(A) nor *Cargill* provides authority for the relief Summit and Gilbert seek in connection with the settlement conference.  Accordingly, Summit and Gilbert's motions are denied with respect to attorney fees and costs incurred in connection with the settlement conference.

### 4.  Remaining Summit Matters

Beyond these three joint issues, Summit also moves to compel responses, supplemental responses, or certification of responses to interrogatories and document

requests related to: social media (Interrogatory No. 17 and Request for Production No. 44); additional factual information (Request for Production Nos. 3 and 5); and mitigation, other sources of income, and job opportunities sought, including tax returns and associated electronically stored information (Interrogatory No. 13 and Request for Production Nos. 18, 53, and 54). *See* Summit's Mem. in Supp. at 5 n.1; Joint Ltr. at 2-3.

### a.  Discovery Sought Other Than Tax Returns

With the exception of the disputed tax returns, the pre-hearing joint letter and the hearing demonstrated that the remaining dispute concerns certification and completeness of Plaintiff's responses. *See, e.g.*, Joint Ltr. at 2-3.  Following the hearing, the Court issued the following text order:

> Consistent with the representations made at the May 27, 2021 hearing, Plaintiff shall certify her responses to Defendant Summit Fire Protection Co.'s Interrogatory No. 17 and Request for Production No. 44; Request for Production Nos. 3 and 5; and Interrogatory No. 13, Request for Production No. 18, and Request for Production No. 54 on or before June 1, 2021.
>
> On or before June 4, 2021, Defendant Summit Fire Protection Co. and Plaintiff shall file a joint letter indicating whether such certification was completed. This letter should not be seen as an opportunity to present additional argument.

ECF No. 97.

Plaintiff subsequently "served the supplemental answers to . . . Summit's [i]nterrogatories (previously served unsigned) with Plaintiff's signature attesting to the truthfulness of her answers under 28 U.S.C. §[]1746 and with counsel's signature pursuant to Fed. R. Civ. P. 11." Post-Hearing Ltr. at 1.  Plaintiff also "served additional documents

in response to [Summit's] [r]equest[s] for production" as well as "written certifications signed pursuant to Fed. R. Civ. P. 11, stating that all non-privileged responsive documents to the requests cited in . . . [the above text order] had been produced."  Post-Hearing Ltr. at 2.  Summit "inform[ed] the Court that Plaintiff, in its view, ha[d] complied with the Court's directive."  Post-Hearing Ltr. at 2.

In light of this supplementation and certification, the Court considers these discovery requests to be resolved and therefore denies Summit's motion in part as moot with respect to Interrogatory Nos. 13 and 17 as well as Request for Production Nos. 3, 5, 44, and 54.

That being said, Plaintiff is reminded of her ongoing duty under Rule 26(e) to supplement or correct her disclosures or responses "in a *timely* manner if [Plaintiff] learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).  Failure to supplement or correct a disclosure or response under such circumstances may result in the exclusion of the information, the imposition of attorney fees and costs, or other appropriate sanction.  *See* Fed. R. Civ. P. 37(c)(1) (failure to disclose or supplement).

### b.  Tax Returns

Turning now to the tax returns issue, Summit's Request for Production No. 53 seeks "[a]ll documents relating to employment and any other source(s) of income that [Plaintiff] sought or obtained from March 28, 2016 through the present, including, but not limited to, applications, resumes, correspondence, diaries, logs, calendars, appointment books, or

other summaries or chronologies of events relating or referring to [Plaintiff's] efforts to seek or maintain employment or other source(s) of income." Ex. D at 72 to Douglas Decl.; *see* Joint Ltr. at 3 (seeking tax returns in connection with Request for Production No. 53). Summit states that it "requested an authorization to enable it to seek copies of Plaintiff's income tax returns." Joint Ltr. at 3. Notably, Request for Production No. 53 does not expressly request the production of tax returns or authorization to obtain tax returns.

In response to Summit's request that she execute the authorization, Plaintiff objected to the production of her entire tax returns and responded that she was "producing all attachments to her tax returns that relate or evidence her income for the last seven years." Ex. D at 56 to Douglas Decl. Plaintiff reiterated in the pre-hearing joint letter that "all documents relating to her income from employment are relevant and she has produced such documents."[4] Joint Ltr. at 3. Plaintiff repeated her position at the hearing. At the hearing, Summit raised, for what appears to be the first time, concern over a possible side business run by Plaintiff. Plaintiff's counsel was not aware of any such business and represented that Plaintiff has not had anything other than W-2 income.

The Court will grant Summit's motion in part with respect to Request for Production No. 53 to the extent Plaintiff has not yet produced her 2020 W-2s and there exist any other documents related to employment and sources of income Plaintiff sought or obtained from March 28, 2016 through the present that have not yet been produced, including but not

---

[4] Shortly before the hearing, it was discovered that Plaintiff's 2020 W-2s were inadvertently not produced with her other W-2s and Plaintiff's counsel "committed to investigate and produce any 2020 W-2s that were inadvertently not produced." Joint Ltr. at 3 n.2.

limited to any "Schedule Cs"[5] to the extent Plaintiff had any such income.  *See E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008).  Plaintiff is again reminded of her ongoing duty under Rule 26(e).  Summit's motion is otherwise denied with respect to Request for Production No. 53.

### c.  Attorney Fees & Request for Dismissal

Summit has requested the attorney fees and costs it incurred in bringing this motion to compel.  *Cf.* Gilbert's Mem. in Supp. at 4 ("Because Gilbert is, for the most part, adopting Summit's [m]emorandum of [l]aw, Gilbert does not seek an award of its attorneys' fees in connection with this [m]otion.").  When a motion to compel is granted in part and denied in part, Rule 37(a)(5)(C) states that the Court "may . . . apportion the reasonable expenses for the motion."  It is this Court's view that any award of attorney fees and costs would have little if any positive effect, and would serve only to embolden further the recipient party, entrench the parties in their respective positions, and increase the costs of this litigation, making an award of fees unjust under the circumstances.  Accordingly, each party shall bear its own costs and attorney fees in connection with Summit's motion to compel.

To the extent Summit and Gilbert request that this matter be dismissed as a sanction under Rule 37(b)(2) for Plaintiff's discovery conduct, the Court finds that this extreme sanction is not warranted under the circumstances.  "Not every instance of failure to comply

---

[5] *See, e.g.*, 2020 Instructions for Schedule C at C-1, Dep't of Treasury, Internal Revenue Serv. (Jan. 13, 2021) ("Use Schedule C (Form 1040) to report income or (loss) from a business you operated or a profession you practiced as a sole proprietor.  An activity qualifies as a business if your primary purpose for engaging in the activity is for income or profit and you are involved in the activity with continuity and regularity."), *available at* https://www.irs.gov/pub/irs-pdf/i1040sc.pdf.

with an order of court, however inexcusable, justifies total extinction of a client's cause of action." *Givens v. A.H. Robins Co.*, 751 F.2d 261, 263 (8th Cir. 1984); *see Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 n. 2 (8th Cir. 2014). "The sanction of dismissal is among the harshest of sanctions, and there is a strong policy favoring a trial on the merits and against depriving a party of h[er] day in court." *Bergstrom v. Frascone*, 744 F.3d 571, 576  (8th Cir. 2014) (quotation omitted).  As Summit and Gilbert acknowledge, "[d]ismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Givens*, 751 F.2d at 263; *see Dunning v. Bush*, 536 F.3d 879, 890 (8th Cir. 2008) ("[A] dismissal sanction is not warranted, except in cases of egregious misconduct.").  "A court should impose the sanction of dismissal only after finding that the sanctioned party acted willfully and in bad faith." *St. Louis Produce Market v. Hughes*, 735 F.3d 829, 832 (8th Cir. 2013); *see Comstock*, 775 F.3d at 992; *Bergstrom*, 744 F.3d at 576.

The discovery process in this case has been a source of mutual frustration for all parties and the Court.  As collectively evidenced in these seven discovery motions, this case is not a model of best discovery practices.  At the same time, such less-than-ideal approaches to discovery do not rise to the level of willful, bad-faith, egregious misconduct. That is not to say the Court condones certain approaches that have been employed here. The Court is merely expressing that the circumstances, actions and inactions of Plaintiff, thus far, do not warrant the extreme sanction of dismissal with prejudice.  The parties are cautioned that the Court will not hesitate to impose appropriate sanctions should the record

reflect a continuing pattern of a party's failure to comply with its discovery obligations.

## B. Plaintiff's Motions

Plaintiff filed two motions to compel discovery, one directed to Summit and one directed to Gilbert. ECF Nos. 73, 76. The motions are largely identical and Plaintiff filed a single memorandum in support of both. *Compare* ECF No. 73 *with* ECF No. 76. In relevant part, the motions request "complete answers" to Plaintiff's interrogatories; "production of documents" responsive to Plaintiff's requests for production; and "an Order that Plaintiff may take depositions." ECF No. 73 at 1; ECF No. 74 at 1. Contrary to Local Rule 37.1, the motions do not identify which interrogatories, requests for production, or depositions are at issue. *See* D. Minn. LR 37.1(b), (c) (requiring a motion to compel to contain "a specification of the disclosure or discovery in dispute" and "the text (which may appear in an exhibit to which the motion or memorandum refers) of any interrogatory, request, question, or notice in dispute, together with each answer, response, or objection to any such interrogatory, request, question, or notice"). Nor did the motions or memorandum contain "a concise statement of why . . . [any] disclosure, answer, response, production, or objection [wa]s insufficient, evasive, incomplete, or otherwise improper." D. Minn. LR 37.1(d).

In her supporting memorandum, Plaintiff described these motions as serving "a 'placeholder' function." Pl.'s Mem. in Supp. at 2, ECF No. 76. Plaintiff explained that the parties had filed a joint motion "to alter the Scheduling Order in relevant respects to allow the [p]arties to resolve remaining discovery disputes and finish outstanding discovery." Pl.'s Mem. in Supp. at 2. Plaintiff went on to state that her motions were "not

fully ripe for the Court's consideration, given that the [p]arties intend to continue negotiations for the following week." Pl.'s Mem. in Supp. at 2; *see* Decl. of Lisa C. Stratton ¶ 13 ("At this time, however, Plaintiff's issues with Defendants' discovery have not been sufficiently vetted to be ripe for this motion."), ECF No. 77. Plaintiff further stated that these motions were "intend[ed] to preserve for the hearing on May 27, 2021, any issues still outstanding at the time of the deadline for submission of memoranda for the hearing date."[6] Pl.'s Mem. in Supp. at 2.

In their respective oppositions, Summit and Gilbert assert that they were unable to respond substantively to Plaintiff's motions. Summit's Mem. in Opp'n at 1 ("Plaintiff's purported [m]otion is barren with respect to facts, requested relief, and support. Plaintiff does not explain in her [m]otion papers why or which of [Summit's] discovery responses are deficient."), ECF No. 81; Gilbert's Mem. in Opp'n at 1 ("Gilbert cannot substantively respond to Plaintiff's [m]otion, and the Court cannot possibly grant it, because Plaintiff did not explain, in her motion papers, what specific relief she seeks from Gilbert."), ECF No. 79. Both Summit and Gilbert also assert that Plaintiff did not satisfactorily engage in the meet-and-confer process, and, in the case of Gilbert, "did not inform Gilbert of the perceived deficiencies in Gilbert's response until several days *after* Plaintiff filed this [m]otion," Gilbert's Mem. in Supp. at 1 (emphasis added); *see* Second Decl. of Andrew E. Tanick ¶ 3, ECF No. 80. Plaintiff's motions were not accompanied by Local Rule 7.1's

---

[6] This statement is somewhat perplexing as Local Rule 7.1 has required the moving party to file *simultaneously* the motion and memorandum of law, among other things, since 2012. D. Minn. 7.1(b)(1); *see* D. Minn. LR 7.1 advisory committee's note to 2012 amendment ("Rule 7.1(b) and (c), former LR 7.1(a)-(b), have been amended to clarify that the parties should file motions and supporting documents simultaneously, rather than filing a motion first and supporting documents later.").

required meet-and-confer statement.  *See* D. Minn. LR 7.1(a)(1); *see also* Fed. R. Civ. P. 37(a)(1) ("The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.").

In the pre-hearing joint letter, Plaintiff stated that she has informed Summit and Gilbert that she intends to withdraw her motions to compel.  Joint Ltr. at 1.  At the hearing, Plaintiff indicated she wished to withdraw her motions.

Plaintiff's request to withdraw her motions is denied and the motions themselves are denied without prejudice.  When a motion to compel is denied, the Federal Rules of Civil Procedure provide that the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney fees."  Fed. R. Civ. P. 37(a)(5)(B).  "But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Similarly, this Court's Local Rules provide:

> If an attorney, law firm, or party violates these [Local R]ules or is responsible for a rule violation, the court may impose appropriate sanctions as needed to protect the parties and the interests of justice.  Potential sanctions include, among other things, excluding evidence, preventing a witness from testifying, striking pleadings or papers, refusing oral argument, or imposing attorney's fees.

D. Minn. LR 1.3.

Plaintiff's request to withdraw comes too late.  Whatever resources Plaintiff may

have saved by filing premature, incomplete motions,[7] Summit, Gilbert, and the Court still had to expend time and resources in response to those motions notwithstanding Plaintiff's "place-holder" approach—a task made all the more difficult by Plaintiff's failure to articulate with any sort of clarity the discovery in dispute.  Pursuant to Rule 37(a)(5)(B) and Local Rule 1.3, the Court will order Plaintiff to pay the reasonable attorney fees and costs incurred by Summit and Gilbert in connection with responding to the motions.  **On or before March 1, 2022**, counsel for Summit and Gilbert shall file affidavits setting forth the attorney fees and costs incurred with responding to Plaintiff's motions to compel. Plaintiff may file a written response to their affidavits **on or before March 15, 2022**.

### IV. Summit's Motion for Protective Order to Quash Plaintiff's Notice of Rule 30(b)(6) Deposition, ECF No. 91

Summit moves for a protective order in connection with its 30(b)(6) deposition noticed by Plaintiff.  Summit requests that the Court narrow the 50 noticed topics or prohibit the deposition in its entirety.  *See generally* Ex. A to Decl. of Bruce J. Douglas [hereinafter Second Douglas Decl.], ECF No. 94-1.  Summit also seeks its attorney fees and costs in connection with the motion.  Plaintiff did not respond to the motion.  *See* ECF No. 102; *see also generally* Summit's Notice of Unopposed Motion, ECF No. 100.  The Court took this matter under advisement without a hearing.  ECF No. 102.

Under Rule 26(c), the Court may, upon a showing of good cause, issue a protective order in connection with discovery sought "to protect a party or person from annoyance,

---

[7] In her accompanying declaration, Plaintiff's counsel states that "Plaintiff does not have the resources required to prepare a full memorandum of law for each Defendant regarding all currently disputed discovery issues in this matter when they may be resolved within a week's time pursuant to the plan outlined in the Parties' Joint Motion." Stratton Decl. ¶ 16.

embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *see, e.g.*, *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973).  Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *May Coating Techs., Inc. v. Illinois Tools Works*, 157 F.R.D. 55, 57 (D. Minn. 1994); *see Hill*, 858 F.3d at 484.

There being no objection by Plaintiff, the Court will grant Summit's motion in part and tailor the topics noticed consistent with the principles of Rule 26(b)(1).  *See* Fed. R. Civ. P. 26(c)(1)(D).  The Court will also strike Condition 10 in its entirety, which required a party to consent to the manner of deposition and waive any objection thereto, "including any objection to the admissibility at trial of this testimony based on this manner of deposition."  Ex. A at 4 to Second Douglas Decl.

For the purposes of Summit's 30(b)(6) deposition only, the scope of the topics will be "with respect to projects within the jurisdiction of Local 417 or on which Local 417 members worked for the company" and for the narrowed time period of January 1, 2015 through December 31, 2016, except as to Topic 30.  Ex. A at 4 to Second Douglas Decl. The Court will permit Plaintiff to inquire on the following topics with additional limitations where noted: 1; 2; 3, except that Topic 3 shall be narrowed to the participation of women; 6; 8, except that determination of "whether to designate hours as female or minority hours" shall be narrowed to "female hours"; 12; 13, except that Topic 13 shall be narrowed to such "differential treatment, discrimination, or retaliation" on the basis of sex or gender; 15; 16; 19; except that Topic 19 shall be narrowed to female sprinkler fitters; 20; 22; 24; 26; 27; 29; 30, without applying the narrowed time period; 31, excluding "Ben Naylor's basis for

20

stating that [Plaintiff] was only being hired to work at [the] Capitol, not at the Stadium, because Bill McManus did not like her"; 32; 33; 36; 37; 41; and 49.  The remaining topics will not be permitted.

Given the absence of a response to Summit's motion, it is not entirely clear whether Plaintiff still intends to conduct a 30(b)(6) deposition of Summit.  Should Plaintiff wish to pursue a 30(b)(6) deposition of Summit on these narrowed topics, such deposition shall take place **no sooner than 35 days but within 60 days from the date of this Order** and "is limited to one day of 7 hours."  Fed. R. Civ. P. 30(d)(1).  **No later than 30 days before the deposition**, Plaintiff shall serve a revised 30(b)(6) deposition notice on Summit indicating on which of the narrowed topics she seeks to inquire.[8]

Rule 26(c) states that Rule 37(a)(5) applies to the award of expenses in connection with a motion for a protective order.  Fed. R. Civ. P. 26(c)(3).  As previously stated, when a motion is granted in part and denied in part, Rule 37(a)(5)(C) states that the Court "may . . . apportion the reasonable expenses for the motion."  For the same reasons articulated in connection with Summit's motion to compel, *see supra* Section III.A.4.c, the Court concludes each party shall bear its own costs and attorney fees.

## V. Plaintiff's Motion to Compel Testimony and Documents from Non-Party William McManus, ECF No. 113

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiff moves to compel compliance with a subpoena issued to William McManus, a former employee of

---

[8] Plaintiff may, of course, elect to no longer pursue a permitted topic and need not include such topic in the revised notice.

Summit, "which commanded [him] to appear and give testimony on June 2, 2021, by video conference" and to produce certain documents and communications.  Pl.'s Mem. in Supp. at 1, ECF No. 114; *see generally* Exs. B, F to Decl. of Kayla C. Herpers, ECF No. 115-1. After being personally served with the subpoena, McManus failed to appear.  *See generally* Exs. A, C to Herpers Decl., ECF No. 115-1.  Summit and Gilbert have no objection to Plaintiff's motion.  *See generally* ECF Nos. 126, 129.

The Court observed that Plaintiff had not filed a certificate of service with her motion and there was no indication that McManus—the subject of Plaintiff's motion—had been served with the motion.  ECF No. 130 at 1.  In an Order, the Court struck the hearing on Plaintiff's motion; directed Plaintiff to serve a copy of the motion and all accompanying documents as well as the Court's Order on McManus; directed Plaintiff to file a certificate of service evidencing the completion of such service; and established a response deadline for McManus to respond to Plaintiff's motion.  ECF No. 130 at 1-2.  McManus was personally served with the aforementioned documents.  *See generally* ECF No. 131. McManus has not responded.

The Court will grant Plaintiff's motion to compel compliance with the subpoena issued to McManus in part.  Under Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."  McManus "was a superintendent on multiple projects where Plaintiff worked."  Pl.'s Mem. in Supp. at 3.  In September 2008, "McManus personally laid Plaintiff off at a Summit project at the Gopher's TCF Stadium at the University of Minnesota."  Pl.'s Mem. in Supp. at 3; *see* Compl. ¶¶ 58-60.

"McManus was also the lead foreman at the [Summit] US Bank project . . ." Plaintiff worked on, in and around October 2015. Pl.'s Mem. in Supp. at 3; *see* Compl. ¶¶ 129-132. Plaintiff alleges "McManus was directly involved in actions that pertain to [her] discrimination and retaliation claims against Summit, such as ignoring her, giving her menial tasks, [and] calling her a 'sue-happy bitch'"[9] Pl.'s Mem. in Supp. at 3; *see* Compl. ¶¶ 130-156, 159.

Plaintiff's subpoena seeks "[a]ny paper or electronic documents and electronic communications such as emails, texts, and phone messages to, from, or about [her] *or any Local 417 member or staff.*" Ex. F at 20 to Herpers Decl. (emphasis added). The Court will strike the latter portion of this request –"or any Local 417 member or staff"—as not proportional to the needs of this case given the lack of a clear connection to Plaintiff's claims. *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii). Plaintiff's subpoena also seeks "[a]ny paper or electronic documents and electronic communications such as emails, texts, and phone messages . . . relating to [Summit's] staffing of the U.S. Bank Stadium project *and any sprinkler fitter applications or referrals, decisions to hire, discipline, lay off, or terminate sprinkler fitters.*" Ex. F at 20 to Herpers Decl. (emphasis added). It is not entirely clear from the request whether the conjunction "and" is limiting the request for "sprinkler fitter applications or referrals, decisions to hire, discipline, lay off, or terminate

---

[9] In her memorandum, Plaintiff also states that McManus "la[id] her off from the US Bank project," citing Paragraphs 132 through 151 of the Complaint. Pl.'s Mem. in Supp. at 3. This statement does not match the allegations cited. As to any layoff from the US Bank project, Plaintiff alleges that she "requested a 'personal layoff'" from the "acting company field superintendent," who "told [her] he didn't think it would be a problem, but that he needed to check with the foreman [(McManus)] before approving the request." Compl. ¶ 149. Plaintiff alleges that McManus "denied her request for leave." Compl. ¶ 149. Plaintiff goes on to allege that she had been "denied even a voluntary layoff to avoid the hostile environment." Compl. ¶ 156.

sprinkler fitters" to those items in connection with the US Bank project or all such items generally in McManus's possession. The lack of a clear connection of all such items generally to Plaintiff's claims renders this request similarly overly broad and not proportional to the needs of this case. The Court will therefore modify this request to limit the "sprinkler fitter applications or referrals, decisions to hire, discipline, lay off, or terminate sprinkler fitters" to those in connection with the US Bank project. *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii). Accordingly, the Court will grant Plaintiff's motion to compel deposition testimony from McManus. The Court will also grant Plaintiff's motion to compel production from McManus of "[a]ny paper or electronic documents and electronic communications such as emails, texts, and phone messages to, from, or about [Plaintiff]" or "relating to [Summit's] staffing of the U.S. Bank Stadium project and any sprinkler fitter applications or referrals, decisions to hire, discipline, lay off, or terminate sprinkler fitters [in connection with the US Bank Stadium project]." Plaintiff's motion is otherwise denied.

As stated in the initial subpoena, McManus shall appear for his deposition via videoconference. Such deposition shall take place within 45 days from the date of this Order. McManus shall reasonably cooperate with Plaintiff's counsel to schedule the deposition. Plaintiff shall serve an amended subpoena consistent with the limitations imposed herein along with this Order on McManus. **McManus is cautioned that this Court "may hold in hold in contempt a person who, having been served, fails without adequate excuse to obey . . . [a] subpoena or an order related to it." Fed. R. Civ. P. 45(g).**

### VI. Plaintiff's Motion to Compel Discovery from Summit Fire Protection Co. and Gilbert Mechanical Contractors, Inc., ECF No. 119

Plaintiff also moves to compel discovery from Summit and Gilbert. In light of the numerous discovery disputes outlined in Plaintiff's motion and "to assist the Court in more efficiently resolving those discovery disputes that may remain," the Court directed the parties to meet and confer and jointly complete a chart identifying the discovery at issue; the parties' positions on the discovery requests; and each party's last offer in compromise. ECF No. 128 at 2, 4. In the Court's experience, this exercise has often had the practical and laudable effect of assisting both the parties and the Court in efficiently addressing the disputed discovery and narrowing any remaining issues. Unfortunately, this exercise did not have the desired impact, particularly as between Plaintiff and Summit. The Court begins with two common, broader issues, and then turns to Summit and Gilbert individually.

#### A. ESI

The first overarching issue concerns the production (or lack thereof) of electronically stored information ("ESI") by Summit and Gilbert. According to Plaintiff, Summit and Gilbert have "produced little to no [ESI] and have allowed no inquiry into how their respective documents and ESI were preserved, maintained, searched, and produced." Pl.'s Mem. in Supp. at 3, ECF No. 123. Plaintiff asserts that,

> [t]hroughout this discovery period, [she] has repeatedly inquired about how [Summit and Gilbert] conducted searches of ESI—or whether they conducted any inventory or searched for ESI at all. [Summit and Gilbert] have never shared information about what ESI they maintain, whether and how they searched it, or what search terms they may have used if

25

they did.

Pl.'s Mem. in Supp. at 3.  Plaintiff requests that Summit and Gilbert "be ordered to run searches for relevant information on databases, such as computers, phones, and social media accounts, and any other databases, where there likely would be discoverable information."  Pl.'s Mem. in Supp. at 31.

As best as this Court is able to tell, Plaintiff is seeking a discovery do-over.  The Pretrial Scheduling Order directed the parties to "preserve all electronic documents that bear on any claims, defenses, or the subjective matter of the lawsuit."  ECF No. 47 at 2. The Pretrial Scheduling Order also directed the parties to "meet and confer to agree upon an ESI Discovery Plan" on or before November 1, 2020.  ECF No. 47 at 2.  Based on the record before the Court, it is not clear that the parties ever met and conferred regarding ESI as directed.  Yet, instead of raising this issue with the Court in a timely manner, Plaintiff waited approximately eight months after that deadline and until fact discovery had closed to file her motion.  Moreover, while Plaintiff asserts that she "made multiple attempts to meet and confer about [Summit and Gilbert's] methods of obtaining ESI from their clients," the record before the Court reflects that Plaintiff did not engage in the meet-and-confer process with Summit and Gilbert on the issue of ESI until approximately the last two weeks of discovery.  *See* Decl. of Lisa C. Stratton ¶¶ 11-13, ECF No. 124; Ex. F at 101-02 and Ex. H at 115-16 to Stratton Decl., 124-1.

Under Rule 26(c)(2)(C), "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . (ii) the party seeking discovery has had ample opportunity to obtain the

information by discovery in the action." Plaintiff had ample opportunity to pursue development of an ESI discovery plan related to the production of ESI during the seven-month discovery period. Plaintiff cannot now complain that the discovery should have been conducted differently.

### B.  Comparator Discovery & *Ellerth-Faragher* Affirmative Defense

The second overarching issue concerns the scope of comparator discovery. According to Plaintiff, Summit and Gilbert have each asserted the so-called *Ellerth-Faragher* affirmative defense. In light of their assertion of this affirmative defense, Plaintiff seeks comparator information regarding *all* complaints of differential treatment and discrimination, not just those based on sex/gender, as well as complaints of retaliation. As the Court understands Plaintiff's argument, which understanding was confirmed by Plaintiff at the hearing, the scope of discoverable comparator complaints should not be limited to those based on sex/gender because Summit and Gilbert's anti-harassment, discrimination, and retaliation policies were broad in scope, covering multiple types of discrimination, and discovery should match the scope of the policies. In support of her argument, Plaintiff relies on *Escamilla v. SMS Holdings Corporation*, No. 09-cv-2120 (ADM/JSM), 2011 WL 13243580 (D. Minn. June 28, 2011), a case Plaintiff's counsel was previously involved in. Summit and Gilbert counter that comparator discovery should be confined to the type of discrimination alleged to have occurred in this case, i.e., sex/gender discrimination and retaliation.

### 1.  *Ellerth-Faragher* Defense

As explained by the Eighth Circuit Court of Appeals,

> [t]he *Ellerth-Faragher* affirmative defense protects an
> employer otherwise vicariously liable for a harassing
> supervisor's conduct if the employer can show that (a) it
> exercised reasonable care to prevent and correct promptly any
> sexually harassing behavior; and (b) the employee
> unreasonably failed to take advantage of any preventive or
> corrective opportunities provided by the employer or to avoid
> harm otherwise.

*Crawford v. BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012) (quotation omitted); *see*

*McCurdy v. Arkansas State Police*, 375 F.3d 762, 772 (8th Cir. 2004) ("The

*Ellerth/Faragher* affirmative defense protects employers in harassment cases in which an

employee fails to stop the harassment by using the employer's effective anti-harassment

policy.  The underlying theme under Title VII is employers should nip harassment in the

bud."); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998).

### 2.  Plaintiff's Discovery Requests are Overly Broad

Plaintiff's overly broad discovery requests, *see infra* Sections VI.C.4, D.4, seeking

any and all complaints of differential treatment and discrimination in this sex-

discrimination case run counter to Rule 26(b)(1)'s core requirement that discovery be

"relevant to any party's claim or defense."  Generally speaking, "[c]ourts have recognized

that discovery, in the Title VII context, must be limited to the practices at issue in the case

and, where an individualized claim of disparate treatment is alleged, the discovery of

information concerning other employees should be limited to employees who are similarly

situated to the [p]laintiff."  *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 516-17 (D.

Minn. 1997); *see also, e.g.*, *Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012

WL 12894845, at *8 (D. Minn. Sept. 21, 2012) ("[M]ost courts that allow . . . discovery [of other incidents of discrimination] conclude that it should be limited by such factors as time, the type of action complained of, or the type of discrimination alleged."); *Jensen v. Astrazeneca LP*, No. 02-cv-4844 (JRT/FLN), 2004 WL 2066837, at *2 (D. Minn. Aug. 30, 2004) ("[D]iscovery of information related to prior claims of discrimination is properly limited to the employment practices and classes at issue in the particular case, the facility and people implicated in the allegations, and to a reasonable time period around the alleged discriminatory action."); *Burns v. Hy-Vee, Inc.*, No. 02-cv-254 (JRT/FLN), 2002 WL 31718432, at *2 (D. Minn. Nov. 21, 2002) ("Discovery, in the Title VII context, must be limited to the employment practices at issue in the case.").  The Eighth Circuit has also held that it is not an abuse of discretion to limit all-encompassing, every-allegation-of-discrimination discovery requests as overly broad.  *See, e.g.*, *Sallis v. Univ. of Minnesota*, 408 F.3d 470, 478 (8th Cir. 2005) (citing favorably *Onwuka*, 178 F.R.D. at 516).

### 3. *Escamilla*

Nor does *Escamilla* provide support for Plaintiff's argument.  "Plaintiff Leticia Zuniga Escamilla . . . allege[d] sexual harassment and sexual battery by her supervisor [Defendant Marco] Gonzalez while she was employed by Defendants SMS Holdings Corporation and Service Management Systems, Inc. (collectively 'SMS')." *Escamilla v. SMS Holdings Corp.*, No. 09-cv-2120 (ADM/JSM), 2011 WL 5025254, at *1 (D. Minn. Oct. 21, 2011) [hereinafter *Escamilla II*]. "Zuniga and Gonzalez were both employees of SMS, which provided cleaning and maintenance services . . . ." *Id.* "Zuniga . . . asserted claims of assault and battery against Gonzalez, and claims against SMS for sexual

29

harassment, constructive discharge, retaliation, and reprisal under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, and the Minnesota Human Rights Act . . . , as well as a claim of respondeat superior." *Id.*

Zuniga moved to compel responses to a number of discovery requests, including complaints of "any unwelcome, inappropriate, or offensive sexual conduct and/or . . . harass[ment], discriminat[ion] against or retaliat[ion] against any female employee"; all actions taken in response to such complaints; and "[a]ny and all documents that concern or relate to any informal or formal allegations, complaint, claim, charge, agency or administrative proceeding, dispute resolution process, grievance and/or lawsuit" regarding such complaints. *Escamilla*, 2011 WL 13243580, at *12-14. Zuniga also sought production of "all documents reflecting or referring to any calls to Defendant's toll-free 'Human Resources Helpline.'" *Id.* at *15.

Two primary arguments concerned the topical and geographic scope of SMS's responses. Zuniga argued that, "because SMS ha[d] asserted an *Ellerth/Faragher* defense to her sexual harassment claims, based on her failure to use SMS's centralized company-wide toll-free human resources helpline," there was no basis for the imposition of a geographic limitation on "reports of sexual harassment, sex discrimination and retaliation complaints." *Id.* (footnote omitted). "In light of SMS's reliance on the *Ellerth/Faragher* defense, Zuniga [further] maintained that she was entitled to any documentation bearing on complaints regarding sexual harassment and retaliation reported via the call line, and SMS's response and investigation into the reported complaints." *Id.*

Zuniga [also] argued that SMS had broadened the scope of

30

> discovery by asserting the *Ellerth/Faragher* defense and by
> choosing to handle all discrimination claims nationwide at its
> national Human Resources Department in Nashville,
> Tennessee. Specifically, Zuniga asserted that because SMS
> argued that it had exercised reasonable care to prevent and
> promptly correct any sexually harassing behavior by offering
> this hotline and because she had failed to use the hotline, she
> was entitled to evidence showing how other employees
> understood the hotline and used the hotline, and how SMS
> responded to complaints made via the hotline or directly to its
> Human Resources Department.

*Id.* at *16 (citations omitted).

SMS initially sought to confine the geographic scope to the place of Zuniga's employment, but subsequently proposed a compromise "of all complaints resulting in investigations and responses by SMS dealing with sexual harassment and retaliation . . . for all locations within the geographical region" encompassing Zuniga's place of employment, which added eight more job sites. *Id.*; *see also id.* ("SMS asserts that [the breadth of discovery] should be no more than the complaints and investigations from the region in which [Zuniga's place of employment] is located, while Zuniga argued she is entitled to nationwide discovery."). SMS maintained, however, that "the *Ellerth/Faragher* defense does not provide Zuniga with an avenue to obtain discovery on all complaints made to SMS via the hotline, especially from employees located in other states." *Id.* at *15.

The magistrate judge began with the general principle that "nationwide discovery of a corporation's records is not allowed in employment cases 'absent a showing of particular need for the requested information.'" *Id.* at *16 (quoting *Semple v. Fed. Express Corp.*, 566 F.3d 788, 794 (8th Cir. 2009)); *see Sallis*, 408 F.3d at 478 ("Courts have also limited the discovery of company records to the local facility where plaintiff was

31

employed, where there is no showing of the need for regional or nationwide discovery."). The magistrate judge observed that "[i]n cases that have rejected nationwide or companywide discovery, courts have emphasized that the employment decision at issue was made locally." *Escamilla*, 2011 WL 13243580, at *16. The magistrate judge concluded, however, that nationwide discovery was "necessary and appropriate with respect to complaints of sexual harassment[] so as to allow Zuniga to investigate and respond to SMS's reliance on the *Ellerth/Faragher* affirmative defense" based on the *structure* of SMS:

> Zuniga has presented evidence, which SMS has not contested, that SMS's Human Resources Department in Nashville, Tennessee handles all calls into the employee hotline regarding reports of harassment and conducts the investigations of these complaints. In addition, SMS represented at the hearing that if a supervisor receives a complaint, that complaint is routed to the Human Resources Department in Nashville for investigation and handling. Even assuming that the final decision regarding whether to discipline an employee based on a complaint may fall on an employee's local supervisor or manager, the fact that the intake and investigation of complaints are handled by SMS nationally dictates that SMS cannot limit its response only to [Zuniga's place of employment] or the region in which [it] is located. To do so would deprive Zuniga of potentially relevant information as to whether SMS's intake, investigation and handling of the complaints was sufficient to find that its policies were reasonable and enforced, and by extension, whether SMS's reliance on the *Ellerth/Faragher* defense is appropriate.

*Id.* at *17.

At no point did the magistrate judge permit the sort of expansive discovery into any and all complaints of differential treatment and discrimination requested by Plaintiff. The discovery permitted in *Escamilla* was circumscribed by the claims at issue—sexual

harassment and retaliation. *See, e.g.*, *id.* ("SMS will only be required [to] search its Helpline records and the records at the Human Resources Department in Nashville to identify complaints of *sexual harassment* from employees of SMS . . . ." (emphasis added) (footnote omitted)), ("[T]he Court will limit SMS's search for responsive information and documents for complaints of *sexual harassment* . . . ." (emphasis added)); *id.* at *18 ("[T]his Court finds that SMS's offer to produce information in its possession or control, regarding *complaints made by employees of retaliation with respect to sexual harassment*, for locations contain[ed] in [the region of Zuniga's place of employment] to be reasonable." (emphasis added)).  Indeed, the magistrate judge held that SMS was *not* "required to produce information and documents regarding *retaliation outside of the scope of sexual harassment*, as the handling of those claims has no bearing on the claims or defenses by the parties in this suit." *Id.* at *18 (emphasis added).

Moreover, notwithstanding SMS's assertion of an *Ellerth-Faragher* affirmative defense, the magistrate judge did not permit nationwide discovery into complaints of retaliation, noting that "Zuniga's alleged fear of retaliation resulted from actions occurring at [*her*] workplace" and therefore "nationwide discovery [wa]s not relevant to Zuniga's claims." *Id.* (emphasis added); *see also id.* ("In addition, the case law does not extend the *Ellerth/Faragher* defense to retaliation claims." (citing cases)).

In sum, not only does *Escamilla* not stand for the proposition that the scope of discovery should mirror the breath of an employer's anti-discrimination policies, it runs directly counter to Plaintiff's position that she is entitled to discovery regarding any and all complaints of differential treatment and discrimination.

33

### 4.  Drawing Analogies to Other Types of Discriminatory Conduct

Plaintiff argued for the first time at the hearing that discovery into any and all complaints of differential treatment and discrimination is needed because there are so few women in the industry.  According to Plaintiff, limiting discovery to complaints of sex discrimination and retaliation will not be sufficient for her to "probe" Summit and Gilbert's policies.  Plaintiff has not provided any authority in support of this argument.[10]  Moreover, the Court finds that any marginal relevance of how non-sex/gender-based complaints of discrimination and differential treatment are handled is vastly outweighed by the resulting interjection of a multitude of unrelated issues into this litigation, issues which are more likely to detract and distract from rather than assist in the resolution of the claims and defenses in this case.  *See* Fed. R. Civ. P. 26(b)(1) (considering "the importance of the discovery in resolving the issues").

This is not a case in which "the claims, practices, and protected classes at issue . . . are so wide-ranging" that any and all complaints of differential treatment and discrimination can be said to be relevant.  *Cardenas*, 2003 WL 244640, at *2.  Absent agreement by Summit or Gilbert to produce broader discovery, the Court will limit discovery to complaints of sex discrimination and retaliation—the claims at issue in this case.

---

[10] To the extent Plaintiff's citation to *Clymore v. Far-Mar-Co., Inc.*, 709 F.2d 499 (8th Cir. 1983), in her memorandum could be read to support this argument, *see* Pl.'s Mem. in Supp. at 28, Plaintiff has taken the Eighth Circuit's "non-immediate comparison" phrasing out of context.  The discussion of "non-immediate comparisons" in *Clymore* had to do with a temporal comparison and the "sequential holding of jobs," i.e., whether comparator employees were limited to "only immediate-succession comparisons" (namely, the male employee who was the plaintiff's "immediate . . . predecessor") as opposed to "non-immediate comparisons."  709 F.3d at 502.  *Clymore* was not about analogizing one type of discrimination to another.

### 5.  State of Minnesota is Proper Geographic Scope

The Court is, however, partially persuaded by Plaintiff's argument that "comparator data does not have to be limited to employees who work[ed] on the same project" she did. Pl.'s Mem. in Supp. at 28.  It is true, as Plaintiff points out, company-wide discovery in connection with claims of sex discrimination was permitted in *National Organization for Women, Inc. v. Minnesota Mining and Manufacturing Co.*, 73 F.R.D. 467, 472 (D. Minn. 1977) [hereinafter *NOW*] ("Even though the scope of the action as it relates to sex discrimination is limited to female employees at the Chemolite and St. Paul plants, information concerning the past history of both male and female employees on a company-wide basis may well be relevant.  It is therefore discoverable.").  But company-wide discovery appears to be the exception rather than the rule.  *Compare, e.g.*, *Semple*, 566 F.3d at 794 ("Generally, a plaintiff in a wrongful termination case is not entitled to company-wide discovery absent a showing of a particular need for the requested information."); *Sallis*, 408 F.3d at 478 ("Courts have also limited the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery."); *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) ("Company-wide statistics are usually not helpful in establishing pretext in an employment-discrimination case, because those who make employment decisions vary across divisions."); *Farmers Ins. Exch.*, 2012 WL 12894845, at *8 ("[W]here disparate treatment is alleged, courts are hesitant to allow discovery into a company's practices nationwide"); *Escamilla*, 2011 WL 13243580, at *16 ("Generally, nationwide discovery of a corporation's records is not allowed in employment cases absent

a showing of a particular need for the requested information." (quotation omitted)); *Burns*, 2002 WL 31718432, at *2 ("Generally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of a particular need and relevance of the requested information."); *Onwuka*, 1778 F.R.D. at 517 ("Courts have often limited the discovery of company records to the local facility, at which the Plaintiff was employed, in the absence of a showing of particularized need for regional or nationwide discovery.") *with Jensen*, 2004 WL 2066837, at *2-3 (nationwide discovery); *NOW*, 73 F.R.D. at 472 (company-wide discovery); *cf. Escamilla*, 2011 WL 12343580, at *17 (nationwide discovery appropriate where centralized human resources department handled all calls to employee tipline and any complaints were routed to centralized human resources department for investigation and handling); *Burns*, 2002 WL 31718432, at *3 (division-level discovery appropriate where termination decision made at divisional level). Absent agreement by Summit or Gilbert to produce broader discovery, the Court will limit the geographic scope to Minnesota. *See Farmers Ins. Exch.*, 2012 WL 12894845, at *9; *see also Cardenas*, 2003 WL 244640, at *2 (request geographically limited to state even though employer had offices nationwide).

### C. Summit

#### 1. Comparator Information

This category of information encompasses Plaintiff's Document Requests Nos. 6 and 9 as well as Interrogatory Nos. 5 and 7. *See* Pl.'s Mem. in Supp. at 6-10.

**Document Request No. 6.** Document Request No. 6 seeks "[a]ll documents relating to sprinkler fitters' availability for work" and "all documents relating to Summit's

36

consideration of candidates for any sprinkler fitter work or assignment, all offers of work, whether rejected or accepted." Ex. D at 63 to Stratton Decl., ECF No. 124-1. Plaintiff requested "responsive documents relating to Plaintiff for any time-frame and from 2010 to the present for all other sprinkler fitters." Ex. D at 63 to Stratton Decl.

The parties' dispute appears to concern the temporal scope of this request. In the pre-hearing submission, Plaintiff expressed a willingness to narrow the applicable period by two years to 2012 to the present, asserting that Summit received her resume in 2012. At the hearing, the Court inquired as to what information was in the record to support the receipt of Plaintiff's resume by Summit in 2012 and Plaintiff indicated she did not believe that was part of the record before the Court. Summit maintains the applicable time period is March to August 2016, the time period between when Plaintiff was laid off by Summit and subsequently hired by Gilbert. *See* Compl. ¶¶ 173, 180.

The period of employment with Summit at issue in this case occurred between approximately June 2015 and March 2016. Compl. ¶¶ 111, 173. Plaintiff's request for close to 10 *years* of information for approximately 9 *months* of employment is not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1); *see also Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) ("We agree with those Courts that, in employment discrimination cases, have placed reasonable limits upon the time period for which discovery responses must be produced."). Instead, the Court finds the period of January 1, 2014 to December 31, 2017 to be proportional to the needs of this case. *See Benner v. Saint Paul Pub. Schs.*, No. 17-cv-1568 (SRN/KMM), 2018 WL 4846760, at *3 (D. Minn. Oct. 5, 2018) ("Given that comparator evidence is generally

37

relevant to a plaintiff's claims in an employment discrimination case, plaintiffs, defendants, and district courts wrestling with the scope of comparator discovery have to draw reasonable lines based on the appropriate considerations in a given case.").

While Document Request No. 6 was categorized in Plaintiff's memorandum as a "comparator" request, Pl.'s Mem. in Supp. at 4, Plaintiff indicated in the pre-hearing submission that "ESI" is also at issue here.  Although Plaintiff has articulated her general dissatisfaction with the ESI production (or lack thereof) in this case, *see* Pl.'s Mem. in Supp. at 2-3, 23-26, the Court is left to guess as to which of her complaints are directed at Summit's response to Document Request No. 6 in particular or discovery in general.   To the extent Plaintiff complains about insufficient efforts by Summit to seek ESI, the Court again emphasizes that Plaintiff had ample opportunity to pursue development of an ESI discovery plan related to the production of ESI yet waited until the eve of the deadline for non-dispositive motions to raise this issue with the Court.   *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

Accordingly, Plaintiff's motion is granted in part with respect to Document Request No. 6 to the extent Summit has responsive information for the period of January 1, 2014 to December 31, 2017 that has not yet been produced.  Plaintiff's motion is otherwise denied.

**Document Request No. 9.**  Document Request No. 9 seeks "[a]ll documents or data—including any ESI stored in any database application—containing or evidencing the names of all persons hired as sprinkler fitters by Summit from 2010 to the present, and each person's gender, race/ethnicity, status as journeyman or apprentice, dates of hiring, length(s) of employment, projects assigned to work, dates of and reasons for layoffs or

terminations of employment."  Ex. D at 64 to Stratton Decl.  Document Request No. 9 additionally seeks "data evidencing the total hours worked and compensation of each such sprinkler fitter by month from January 2015 to the present, broken down by earnings at regular pay and earnings at overtime or holiday pay."  Ex. D at 64 to Stratton Decl.

The dispute here is again one of temporal scope as well as appropriate comparator information.  For the reasons stated above in connection with Document Request No. 4, the Court will limit the time period to January 1, 2014 through December 31, 2017.  For the reasons stated above in Section VI.B, Summit need not produce race/ethnicity information.  Plaintiff's motion is granted in part as to Document Request No. 4 and Summit shall, to the extent it has not done so already, produce responsive documents or data identifying the names of all persons hired as sprinkler fitters by Summit from January 1, 2014 through December 31, 2017, as well as each person's gender, status as journeyman or apprentice, date(s) of hire, length(s) of employment, project(s) assigned to, and date(s) of and reason(s) for layoff(s) or termination(s) of employment.  Additionally, Summit shall, to the extent it has not already done so, produce data evidencing the total hours worked and compensation of each identified sprinkler fitter by month from January 1, 2014 through December 31, 2017, broken down by earnings at regular pay and earnings at overtime or holiday pay.  Plaintiff's motion is otherwise denied with respect to Document Request No. 4.  Again, Plaintiff had ample opportunity to pursue development of an ESI discovery plan related to the production of ESI during discovery.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

**Interrogatory No. 5.**  In relevant part, Interrogatory No. 5 states:

For the time-period from 2010 to the present, identify all

39

> projects on which Summit was contracted to provide fire protection services and on which one or more sprinkler fitter[s] worked. For each project, state whether it was a public or government-funded project, and describe any applicable local, state, federal, or contractual obligations regarding workplace participation goals for women or minorities and/or any obligations relating to non-discrimination, the prevention or correction of harassment or hostile work environments, or non-retaliation.

Ex. D at 86 to Stratton Decl. Based on the pre-hearing submission, the continuing dispute again appears to be the temporal and geographic scope of this interrogatory.

For the reasons previously stated, the Court will limit Interrogatory No. 5 to the period between January 1, 2014 through December 31, 2017 and to projects in Minnesota. The Court will also limit that portion of Interrogatory No. 5 inquiring about workplace participation goals to workplace participation goals regarding women, which may include but are not limited to any contractual requirement that a certain number of female sprinkler fitters work on a project. Plaintiff's motion is granted in part to the extent Summit has information responsive to Interrogatory No. 5 as narrowed herein that has not yet been produced and is otherwise denied.

**Interrogatory No. 7.** Interrogatory 7 asks Summit to

> [i]dentify all persons who have worked for you as a sprinkler fitter from 2010 to the present. For each person, provide the following data: date of hire, gender, race/ethnicity, journeyman or apprentice status, license status, and length(s) of employment and reason for separation. For the time-period January 2015 to the present, provide the total hours worked and total compensation by month for each sprinkler fitter and distinguish between regular pay and overtime or holiday pay. Please identify each employee who worked on the State Capitol Restoration or US Bank Stadium projects and the earliest and latest dates each individual worked on the project,

and why each individual discontinued working on the project.

Ex. D at 88 to Stratton Decl.

The Court will grant Plaintiff's motion in part with request to Interrogatory No. 7. To the extent it has not done so already, Summit shall identify all individuals it employed as sprinkler fitters for the period between January 1, 2014 through December 31, 2017, in Minnesota—not just those employed in connection with the state capitol and US Bank projects, including the individual's date of hire, gender, journeyman or apprentice status, license status, and length(s) of employment and reason(s) for separation.   For these identified individuals, Summit shall, to the extent it has not done so already, also provide the total hours worked and total compensation by month for each sprinkler fitter and distinguish between regular pay and overtime or holiday pay for the time period between January 1, 2014 through December 31, 2017.  Lastly, to the extent it has not already done so, Summit shall identify each sprinkler fitter who worked on the state capitol and US Bank projects, the earliest and latest dates each individual worked on the project, and why each individual discontinued working on the project.  Plaintiff's motion is otherwise denied with respect to Interrogatory No. 7.

### 2.  Personnel Files

Document Request No. 5 from Plaintiff's second set of document requests seeks "[t]he personnel files of Bill McManus, Ben Naylor, Rob Laush, Freddy Pointer, Todd Deitz, Ray Blossom, Doug Gatlin, Steven Sangren, Stephan Spah, Brad Groom and any other person who worked for Summit as a sprinkler fitter between 2012 and the present." Ex. C at 55 to Stratton Decl., ECF No. 154-1.  Summit contends that Document Request

No. 5 is overly broad and objects to producing personnel files beyond the supervisors and employees named in Document Request No. 5 and who worked on the state capitol project.

"[I]n Title VII litigation, in which plaintiffs are required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files." *Onwuka*, 178 F.R.D. at 517 (quotation omitted); *accord Cardenas*, 2003 WL 244640, at *2. At the same time, such files implicate substantial privacy concerns of non-parties. *See, e.g.*, *Cardenas*, 2003 WL 244640, at *2; *Onwuka*, 178 F.R.D. at 517; *Raddatz*, 177 F.R.D. at 447-48.

The Court begins with the individual personnel files requested. Based on information in the record and the pre-hearing submission, McManus was a job superintendent for projects Plaintiff worked on for Summit. *See, e.g.*, *supra* Section V; Compl. ¶ 129. Based on the pre-hearing submission, Naylor had an administrative and supervisory role for Summit on the US Bank project and handled Plaintiff's request for personal leave. *See, e.g.*, Compl. ¶ 148 ("Plaintiff directly contacted the acting company field superintendent and requested a 'personal layoff.'"). Todd Dietz was "[t]he foreman for [Plaintiff's] crew" on the US Bank project. Compl. ¶ 139. Based on information in the record and provided at the hearing, Steve Sangren was the foreman at the state capitol project. *See, e.g.*, Compl. ¶ 112. Doug Gatlin and Stephan Spah were fellow sprinkler fitters; Gatlin on the US Bank project and Spah on the state capitol project. Compl. ¶¶ 145, 160.

The Court will grant Plaintiff's motion as to McManus, Naylor, Deitz, and Sangren, who had supervisory roles over Plaintiff when she worked on the state capitol and US Bank projects for Summit, and with respect to McManus, Deitz, and Sangren, who are alleged

to have been involved in acts constituting discrimination and/or retaliation.  *See, e.g.*, Compl. ¶¶ 131-32, 134-35, 142-44, 146-47, 149-51, 155 (McManus); Compl. ¶¶ 139-41 (Deitz); Compl. ¶¶ 112-16, 126, 159, 192, 166-73 (Sangren).  *See Griffith v. Wal-Mart Stores, Inc.*, 163 F.R.D. 4, 4-5 (E.D. Ky. 1995) (ordering production of personnel files "of three managerial employees who were involved in the events leading to plaintiff's termination, which termination plaintiff alleges was discriminatory in nature"); *E.E.O.C. v. Cty. of San Benito*, 818 F. Supp. 289, 290-92 (N.D. Cal. 1993) (ordering production of personnel file of supervisor whose conduct formed the basis of charges filed against county for sex discrimination and retaliation).  As to Laush, Pointer, Blossom, and Groom, Plaintiff has not clearly articulated how they are connected to the events underlying this litigation or the relevance of their personnel files to any of the claims or defenses in this litigation.  Accordingly, the Court will deny Plaintiff's motion with respect to the production of Laush, Pointer, Blossom, and Groom's personnel files, except to the extent they otherwise fall within the category of sprinkler fitters described below.

Turning next to Plaintiff's request for the personnel files of sprinkler fitters who worked for Summit between 2012 and the present, including Gatlin and Spah, Plaintiff has sued Summit over conduct that took place during her employment in June 2015 through March 2016.  Compl. ¶¶ 111, 173.  Although Plaintiff was employed by Summit for approximately nine months, she seeks nine years' worth of personnel files.  "[W]here an individualized claim of disparate treatment is alleged, the discovery of information concerning other employees should limited employees who are similarly situated to the [p]laintiff."  *Onwuka*, 178 F.R.D. at 516-17; *accord Sturge v. Nw. Airlines, Inc.*, No. 05-

cv-1665 (DSD/SRN), 2010 WL 11561176, at *3 (D. Minn. Feb. 19, 2010).   As stated

above, Gatlin and Spah were fellow sprinkler fitters on the US Bank and state capitol

projects.   Summit states that it has already produced Gatlin's personnel file.   Summit's

Mem. in Opp'n at 18 n.13.   Therefore, Plaintiff's motion is granted as to Spah's personnel

file.   The Court will also grant Plaintiff's motion in part as to those sprinkler fitters that

worked for Summit between January 1, 2014 and December 31, 2017.   *See Burns*, 2002

WL 31718432, at *3; *Raddatz*, 177 F.R.D. at 448.   Responsive personnel files shall be

designated as "Confidential" under the existing Protective Order.   *See generally* ECF No.

51.   Plaintiff's motion is otherwise denied as to the personnel files of other sprinkler fitters.

### 3.   Summit's ESI

Plaintiff groups Document Request Nos. 11, 17, 22, and 28 together as disputed ESI

requests.   *See* Pl.'s Mem. in Supp. at 11-12.

As stated above, *see supra* Section VI.A, Plaintiff had ample opportunity to pursue

development of an ESI discovery plan during the seven-month discovery period and bring

this issue to the Court's attention if need be.   Yet, she did not.   This alone warrants denial

of her motion.   *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

In addition, Summit "searched ESI during the EEOC probe in 2016 and 2017," and,

although that "information is no longer readily available," Summit produced the

information "to Plaintiff to the same extent it was produced to the EEOC."   Summit's Mem.

in Opp'n at 19, ECF No. 134.   Evidence before the Court indicates that, in order "[t]o

conduct a second ESI search as Plaintiff requests," Summit would need to "rebuild[ various

databases with the stored electronic information that is currently archived and not

immediately accessible." Decl. of Deanna Schumacher ¶ 3, ECF No. 135. Summit consulted with its third-party vendor, who quoted Summit approximately $9,000 to "rebuild certain databases and conduct additional searches." Schumacher Decl. ¶ 4; *see generally* Ex. A to Schumacher Decl., ECF No. 135-1. It would cost another approximately $3,000 for the information to "rebuilt into a searchable database." Schumacher Decl. ¶ 6.

To the extent Plaintiff requests that Summit be ordered to rerun searches for ESI, Plaintiff's motion is denied.

**Document Request No. 11.** Document Request No. 11 seeks "all documents (including text messages, voice messages, emails, and other electronically stored information) sent, received, or maintained by Summit (or any present or past employee or agent) which relate to, refer to, or otherwise memorialize communications regarding Plaintiff or Doug Gatlin" from 2012 to the present. Ex. D at 65-66 to Stratton Decl.

For the reasons previously stated, the Court will limit Document Request No. 11 to the period between January 1, 2014 through December 31, 2017. The Court will also limit Document Request No. 11 to communications regarding Plaintiff as Plaintiff has not persuasively articulated to the Court how information responsive to Document Request No. 11 related to Gatlin is relevant to any of the claims or defenses in this litigation. The Court will grant Plaintiff's motion in part to the extent Summit has documents responsive to Document Request No. 11 as narrowed herein that have not yet been produced. Plaintiff's motion is otherwise denied. To the extent Summit contends that certain responsive documents may be privileged, Summit shall appropriately log such documents in the ordinary course.

45

**Document Request No. 17.**  Excluding communications with counsel, Document

Request No. 17 seeks

> all correspondence, audio or voice recordings, transcriptions,
> written statements, or other reductions to writing relating to
> requests for interviews, interviews, statements, or
> conversations with any person or entity, including any present
> or former agent, employee or official of Summit or any staff,
> agent, or officer of Local 417, concerning Plaintiff or the
> subject matter of this litigation.

Ex. D at 69 to Stratton Decl.  Summit states that it has previously produced responsive

documents, including interview notes and statements.  In its pre-hearing submission,

Summit represents that it has no additional non-privileged responsive documents.

A party cannot be compelled to produce what it does not have.  *See, e.g.*, *Edeh v.

Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) ("Here, Equifax maintains

that it does not have the documents requested in Requests for Production Nos. 3 and 4.  If

Equifax does not have the documents in its possession, custody, or control, it cannot be

compelled to produce them."); *see also Farmers Ins. Exch.*, 2012 WL 12894845, at *5 ("Of

course, the Court cannot order any party to produce something in discovery that does not,

in fact, exist.").  "The Court must accept, at face value, a party's representation that it has

fully produced all materials that are discoverable." *Bombardier Recreational Prods., Inc.,

v. Arctic Cat, Inc.*, No. 12-cv-2706 (MJD/LIB), 2014 WL 5685463, at *7 (D. Minn. Sept.

24, 2014) (quotation omitted)).  Accordingly, Plaintiff's motion is denied with respect to

Document Request No. 17.  *See Bombardier Recreational Prods.*, 2014 WL 5685463, at

*7; *Edeh*, 291 F.R.D. at 337.  Summit shall, however, ensure that to the extent any

*privileged* responsive documents exist, such documents shall be included in a privilege log

46

produced in the ordinary course.

**Document Request No. 22.**   Document Request No. 22 seeks "social media or website content by Summit Fire or any of its agents or employees relating to any allegations in Plaintiff's Complaint, to the U.S Bank Stadium project or State Capitol project, or to any Summit employee assigned to either of those projects."  Ex. D at 71 to Stratton Decl.

In its response to this request, its memorandum in opposition to Plaintiff's motion, and the pre-hearing submission, Summit states that it has no responsive documents.  *See, e.g.*, Ex. D at 71 to Stratton Decl.; Summit's Mem. in Opp'n at 20.  At the hearing, the Court confirmed with Summit that there were no responsive documents in its possession.  Plaintiff's motion is denied with respect to Document Request No. 22.  *See Bombardier Recreational Prods.*, 2014 WL 5685463, at *7; *Edeh*, 291 F.R.D. at 337.

**Document Request No. 28.**   Document Request No. 28 seeks "[a]ll documents referring to or relating to Summit's document retention or destruction policy or practices and any destruction (including pursuant to policy or routine) of any documents that would have been responsive to any [of Plaintiff's document requests] . . . ."  Ex. D at 73 to Stratton Decl.

In its opposition, Summit states that it has no responsive documents.  Summit's Mem. in Opp'n at 20.  In the pre-hearing submission, Summit states that it does not have an official, company-wide document retention or destruction policy, which was told to Plaintiff.  Plaintiff's motion is denied with respect to Document Request No. 28, *see Bombardier Recreational Prods.*, 2014 WL 5685463, at *7; *Edeh*, 291 F.R.D. at 337, except that to the extent it has not done so already, Summit shall supplement its response

to Document Request No. 28 to reflect that it does not have a formal document retention or destruction policy.[11]

### 4. Complaints & Grievances

This category of information dovetails into the earlier discussion regarding the assertion of an *Ellerth-Faragher* affirmative defense, *see supra* Section VI.B, and encompasses Plaintiff's Document Requests Nos. 4, 13, 14, and 15 as well as Interrogatory Nos. 8 and 9. *See* Pl.'s Mem. in Supp. at 17-21.

**Document Request No. 4.** Document Request No. 4 seeks "[a]ll documents and communications related to Summit's response to any complaint, concern, report of differently treatment, or request for tools, equipment, or support of any kind from Plaintiff or Doug Gatlin, including their formal charges of discrimination and relation." Ex. D at 61 to Stratton Decl.

Although Summit quarrels with the lack of any time limitation and the inclusion of Gatlin in this request, Summit has ultimately stated in the pre-hearing submission that it is not aware of any complaints by Plaintiff or Gatlin. Plaintiff's motion is granted in part to the extent that Summit shall supplement its response to Document Request No. 4 to the extent it has not done so already to reflect that it is not aware of any complaints by Gatlin, and is otherwise denied.

**Interrogatory No. 9.** Interrogatory No. 9 is directed at complaints made to Summit by Plaintiff and seeks information regarding "any complaint of any kind, report of

---

[11] To the extent Plaintiff seeks information from Summit regarding a litigation hold it implemented in connection with the filing of a charge of discrimination by Plaintiff against Summit with the EECO in 2016, Document Request No. 28 does not, by its terms, ask for such information.

differential treatment, or request for tools, equipment, or support of any kind made by Plaintiff."  Ex. E at 90 to Stratton Decl.  Interrogatory No. 9 also asks about whether "Summit or any of its employees was aware of any complaint Plaintiff made about *any other entity* prior to the service of the Complaint in this lawsuit."  Ex. E at 90 to Stratton Decl.

Summit essentially answered "none" to Interrogatory No. 9 by incorporating by reference its response to Interrogatory No. 8.  Ex. E at 90 to Stratton Decl.  The pre-hearing submission, however, sets forth additional responsive information.  Plaintiff's motion is granted in part as to Interrogatory No. 9 and Summit shall supplement its response to Interrogatory No. 9 to reflect the additional responsive information contained in the pre-hearing submission.

**Document Request Nos. 13, 14, and 15 as well as Interrogatory No. 8.**  Document Request Nos. 13, 14, and 15 as well as Interrogatory No. 8 collectively seek information relating to complaints and grievances "regarding differential treatment, discrimination, or retaliation based on legally protected status or legally protected conduct" from 2010 to the present.  Ex. D at 67 to Stratton Decl.; *see* Ex. D at 67-68 to Stratton Decl.; Ex. E at 89-90 to Stratton Decl.

Based on the pre-hearing submission, Summit has identified three individuals responsive to these discovery requests: Plaintiff, Gatlin, and Esteban Patino.  At the hearing, the Court inquired whether all information had been produced as to Patino.  While Summit believed it had been, Plaintiff informed the Court that she had not received the information.  Summit reiterated its intention to produce information regarding Patino and

committed to following up on this issue.

Plaintiff's motion will be granted in part.  To the extent it has not done so already, Summit shall supplement its responses to and document production for Document Request Nos. 13, 14, and 15 as well as Interrogatory No. 8 regarding Plaintiff, Gatlin, and Patino.

The Court will further grant Plaintiff's motion as to these discovery requests to the extent Summit has information responsive to Document Request Nos. 13, 14, and 15 as well as Interrogatory No. 8 that has not yet been produced related to sex/gender discrimination and retaliation in connection with sex/gender discrimination for the time period between the period between January 1, 2014 through December 31, 2017.  *See Escamilla*, 2011 WL 13243580, at *18.

Plaintiff's motion is otherwise denied as to Document Request Nos. 13, 14, 15 as well as Interrogatory No. 8 for the reasons stated above in Section VI.B.  *See also* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii).  The assertion of an *Ellerth-Faragher* defense neither renders moot Rule 26(b)(1)'s fundamental precept that discovery be connected to the claims and defenses asserted nor does it open discovery up to any and all complaints of discrimination or differential treatment beyond the employment practices and classes at issue.

### D. Gilbert

#### 1.  Comparator Information

As stated above, this category of information encompasses Plaintiff's Document Requests Nos. 6 and 9 as well as Interrogatory Nos. 5 and 7.  *See* Pl.'s Mem. in Supp. at 6-10.

**Document Request No. 6.**   Document Request No. 6 seeks "[a]ll documents relating to sprinkler fitters' availability for work" and "all documents relating to Gilbert's consideration of candidates for any sprinkler fitter work or assignment, all offers of work, whether rejected or accepted."  Ex. B at 29 to Stratton Decl.  Plaintiff requested "responsive documents relating to Plaintiff for any time-frame and from 2010 to the present for all other sprinkler fitters."  Ex. B at 30 to Stratton Decl.

At the hearing, Plaintiff stated that she agreed to a narrowed timeframe for this request with Gilbert and Gilbert stated that it has produced everything it has responsive to Document Request No. 6.  Plaintiff ultimately stated that she was satisfied as to Gilbert's "paper" document production, but related ESI was still at issue.  Plaintiff also took issue with the accuracy of some of the data contained in Gilbert's production.

Plaintiff's motion is denied as to Document Request No. 6.  Gilbert has produced everything it has in response to Document Request No. 6 and, as the Court has repeatedly emphasized, Plaintiff had ample opportunity to pursue development of an ESI discovery plan related to the production of ESI during the seven-month discovery period.  To the extent Plaintiff believes there may be errors in the data produced by Gilbert, that issue is premature as the parties are still meeting and conferring on any purported errors and therefore is not properly before the Court at this time.

**Document Request No. 9.**   Document Request No. 9 seeks "[a]ll documents or data—including any ESI stored in any database application—containing or evidencing the names of all persons hired as sprinkler fitters by Gilbert from 2010 to the present, and each person's gender, race/ethnicity, status as journeyman or apprentice, dates of hiring,

length(s) of employment, projects assigned to work, dates of and reasons for layoffs or terminations of employment." Ex. B at 31 to Stratton Decl. Document Request No. 9 additionally seeks "documents or data evidencing the total hours worked and compensation of each such sprinkler fitter by month from January 2015 to the present, broken down by earnings at regular pay and earnings at overtime or holiday pay, and the names and hours worked by all sprinkler fitters who worked for Gilbert either at the YMCA project or the Gustavus Adolphus project referenced in Plaintiff's Complaint." Ex. B at 31 to Stratton Decl.

At the hearing, Gilbert stated that it agreed to look to see whether it had information going back to 2013. While Gilbert had payroll data going back to 2013, it only had timesheets going back to 2014. Gilbert produced all responsive information for that period. Plaintiff was satisfied with Gilbert's response so long as it had produced the payroll data as best as it was able to capture it.

Also at the hearing, Plaintiff raised two additional issues: the accuracy of the data and the production of a particular type of report known as a "remittance form." Both of these issues were raised with Gilbert on the day of the hearing. Gilbert committed to looking into the accuracy issues raised by Plaintiff.

Plaintiff's motion is denied as moot as to Document Request No. 9. To the extent Plaintiff seeks to bring issues raised with Gilbert for the first time before the hearing, those issues are not properly before the Court as they were not included in Plaintiff's motion. Moreover, Gilbert has committed to looking into the purported inaccuracies in its data, so any dispute as to the accuracy of the data is not ripe for resolution.

**Interrogatory No. 5.**  In relevant part, Interrogatory No. 5 states:

> For the time-period from 2010 to the present, identify all projects on which Gilbert was contracted to provide fire protection services and on which one or more sprinkler fitter[s] worked.  For each project, state whether it was a public or government-funded project, and describe any applicable local, state, federal, or contractual obligations regarding workplace participation goals for women or minorities and/or any obligations relating to non-discrimination, the prevention or correction of harassment or hostile work environments, or non-retaliation.

Ex. A at 8 to Decl. of Lisa C. Stratton, ECF No. 124-1.  Gilbert objected to this interrogatory on grounds that it "has engaged in hundreds of projects" since 2010 and "cannot reasonably be expected to identify 'all projects' [it] was contracted to provide fire protection services and on which of those projects Gilbert employed one or more sprinkler fitters worked for a period of over ten years."  Ex. A at 8-9 to Stratton Decl.  Gilbert also stated that it "cannot be reasonable expected to manually review hundreds of governing contracts, collective bargaining agreements, and union bylaws to determine whether such requirements existed, and then provide further information if any such requirements existed."  Ex. A at 9 to Stratton Decl.  Following the additional required meet-and-confer, Gilbert stands by its objection, but has stated that it is not aware of any state contracts during the relevant time period and that it was not aware of any contracts that contained a specific requirement to have a certain number of female sprinkler fitters on a project.

The Court will narrow the applicable time period to January 1, 2014 through December 31, 2017.  The Court will also limit the inquiry regarding workplace participation goals to those involving women, which may include but are not limited to any

contractual requirement that a certain number of female sprinkler fitters work on a project.

Accordingly, the Court will grant Plaintiff's motion in part as to Interrogatory No. 5 as follows:

> For the time-period from **January 1, 2014 through December 31, 2017**, identify all projects on which Gilbert was contracted to provide fire protection services and on which one or more sprinkler fitters worked. For each project, state whether it was a public or government-funded project, and describe any applicable local, state, federal, or contractual obligations regarding **workplace participation goals for women** and/or any obligations relating to non-discrimination, the prevention or correction of harassment or hostile work environments, or non-retaliation.

Plaintiff's motion is otherwise denied as to Interrogatory No. 5.

> **Interrogatory No. 7**. Interrogatory 7 states:

> Identify all persons who have worked for you as a sprinkler fitter from 2010 to the present. For each person, provide the following data: date of hire, gender, race/ethnicity, journeyman or apprentice status, license status, and lengths(s) of employment and reason for separation. For the time-period January 2015 to the present, provide the total hours worked and total compensation by month for each sprinkler fitter and distinguish between regular pay and overtime or holiday pay. Please identify each employee who worked on the State Capitol Restoration or US Bank Stadium projects and the earliest and latest dates each individual worked on the project, and why each individual discontinued working on the project.

Ex. A at 11 to Stratton Decl. Interrogatory No. 7 also states that data responsive to Document Request No. 9 "may be substituted for an answer to this Interrogatory if it provides all information responsive to the Interrogatory." Ex. A at 11 to Stratton Decl.

The Court will likewise grant Plaintiff's motion in part with respect to Interrogatory No. 7. For purposes of clarity, the Court will break this interrogatory down into discrete

sections.  First, to the extent it has not already done so, Gilbert shall:

> Identify all persons who have worked for [it] as a sprinkler fitter from **January 1, 2014 through December 31, 2017**.  For each person, provide the following data: date of hire, **gender,** journeyman or apprentice status, license status, and lengths(s) of employment and reason for separation.

Gilbert need not identify the race/ethnicity of any such person as it is not relevant to the claims being asserted in this case.  At the hearing, Gilbert's counsel stated that she had inquired of her client; there was no additional information regarding the reason a particular individual may have discontinued working; and it was Gilbert's understanding that a person was laid off when there was no more work to be done.  There was, however, one additional person whom Gilbert's counsel was going to follow up with.  To the extent such follow up has not yet been completed, Gilbert's counsel shall do so and supplement Gilbert's response to Interrogatory No. 7 to the extent necessary.

Plaintiff's motion is otherwise denied.  Gilbert has already provided payroll data to Plaintiff from 2013 to the present in response to Document Request No. 9 and this shall suffice for that section of Interrogatory No. 7 seeking "the total hours worked and total compensation by month for each sprinkler fitter and distinguish between regular pay and overtime or holiday pay" from January 2015 to the present.  As stated above, Gilbert has committed to looking into the purported inaccuracies in its data, so any dispute as to the accuracy of the data is not ripe for resolution.  Further, the State Capitol Restoration and US Bank Stadium were *Summit* projects, not Gilbert projects.  *Compare, e.g.*, Compl. ¶¶ 106-79 ("Employment with Summit Fire Protection: State Capitol Restoration and US Bank Stadium") *with* ¶¶ 180-227 ("Gilbert Mechanical Corp.") (referencing YMCA and

Gustavus Adolphus projects).  There is nothing before the Court suggesting that Gilbert would know and have access to the identities of Summit's employees, their first and last dates of employment, and why they discontinued working on these non-Gilbert projects.

### 2.  Personnel Files

Document Request No. 38 seeks the production of certain personnel files.  *See* Ex. B at 49 to Stratton Decl., ECF No. 124-1.  This request has been resolved except as to the personnel files of "Doug Gatlin[] and any sprinkler fitter who worked for Gilbert between 2012 and the present."  Ex. B at 49 to Stratton Decl.

Beginning with the personnel file of Doug Gatlin, Plaintiff emphasizes that Gatlin was the foreman at the Gustavus Adolphus project.  *See also, e.g.*, Compl. ¶ 215.  While Gatlin may have served in a supervisory role on that project, Plaintiff has not alleged that he engaged in acts constituting discrimination or retaliation, had control over where Plaintiff was assigned to work, or was in any way involved in the decision to lay her off. *See, e.g.*, Compl. ¶¶ 199-223.  *Contra Griffith*, 163 F.R.D. at 4-5 (ordering production of personnel files "of three managerial employees who were involved in the events leading to plaintiff's termination, which termination plaintiff alleges was discriminatory in nature"); *Cty. of San Benito*, 818 F. Supp. at 290-92 (ordering production of personnel file of supervisor whose conduct formed the basis of charges filed against county for sex discrimination and retaliation).  Plaintiff has not persuasively articulated to the Court how Gatlin's personnel file is relevant to any of the claims or defenses in this litigation. Accordingly, the Court will deny Plaintiff's motion with respect to the production of Gatlin's personnel file except to the extent Gatlin's personnel file is encompassed within

other discovery the Court has ordered Gilbert to produce.

Turning next to the personnel files of sprinkler fitters who worked for Gilbert between 2012 and the present, the Court finds the nine-year timeframe of this request to be exceptionally long, particularly considering the fact that Plaintiff worked for Gilbert for approximately three months between August and October 2016. Compl. ¶¶ 180, 214, 226. The Court will grant Plaintiff's motion in part as to the personnel files of possible comparators and narrow the time period to those sprinkler fitters that worked for Gilbert between January 1, 2014 and December 31, 2017. *See Burns*, 2002 WL 31718432, at *3; *Raddatz*, 177 F.R.D. at 448; *see also Sturge*, 2010 WL 11561176, at *3; *Onwuka*, 178 F.R.D. at 516-17. Responsive personnel files shall be designated as "Confidential" under the existing Protective Order. *See generally* ECF No. 51.

### 3. Gilbert's ESI

As stated above, Plaintiff groups Document Request Nos. 11, 17, 22, and 28 together as disputed ESI requests. *See* Pl.'s Mem. at 12-14. For the reasons previously articulated, *see supra* Section VI.A, Plaintiff had ample opportunity to pursue development of an ESI discovery plan during the seven-month discovery period and bring this issue to the Court's attention if need be. To the extent Plaintiff requests that Gilbert be ordered to rerun searches for ESI, Plaintiff's motion is denied.

**Document Request No. 11.** Document Request No. 11 seeks "all documents (including text messages, voice messages, emails, and other electronically stored information) sent, received, or maintained by Gilbert (or any present or past employee or agent) which relate to, refer to, or otherwise memorialize communications regarding

Plaintiff or Doug Gatlin" from 2012 to the present.  Ex. B at 33 to Stratton Decl.

In the pre-hearing submission, Gilbert states that it has confirmed that it has no additional responsive information regarding Plaintiff.  Again, a party cannot be compelled to produce what it does not have.  *See Edeh*, 291 F.R.D. at 337; *Farmers Ins. Exch.*, 2012 WL 12894845, at *5.  "The Court must accept, at face value, [Gilbert's] representation that it has fully produced all materials that are discoverable."  *Bombardier Recreational Prods.*, 2014 WL 5685463, at *7 (quotation omitted).

Gilbert maintains its objection to producing responsive information regarding Gatlin.  As stated above with respect to Document Request No. 38 and Gatlin's personnel file, Plaintiff has not persuasively articulated to the Court how information responsive to Document Request No. 11 related to Gatlin is relevant to any of the claims or defenses in this litigation.  Accordingly, Plaintiff's motion is denied with respect to Document Request No. 11.

**Document Request No. 17.**  Excluding communications with counsel, Document Request No. 17 seeks

> all correspondence, audio or voice recordings, transcriptions, written statements, or other reductions to writing relating to requests for interviews, interviews, statements, or conversations with any person or entity, including any present or former agent, employee or official of Gilbert or any staff, agent, or officer of Local 417, concerning Plaintiff or the subject matter of this litigation.

Ex. B at 38 to Stratton Decl.  Here too, in the pre-hearing submission, Gilbert states that it

does not have any non-privileged responsive documents.[12]  Plaintiff's motion is likewise denied with respect to Document Request No. 17.  *See Bombardier Recreational Prods.*, 2014 WL 5685463, at *7; *Edeh*, 291 F.R.D. at 337.

**Document Request No. 22.**  Document Request No. 22 seeks "social media or website content by Gilbert or any of its agents or employees relating to the allegations in Plaintiff's Complaint, to any project which Gilbert assigned Plaintiff to work, or to any Gilbert employee assigned to either of those projects."  Ex. B at 41 to Stratton Decl.  In the pre-hearing submission, Gilbert indicated that it was conducting a review of its social media and would produce responsive information.  At the hearing, the Court inquired whether the social medical information had been produced.  Gilbert indicated that it had not yet been produced.  Plaintiff's motion is granted with respect to Document Request No. 22, and Gilbert is directed to produce the responsive social media information to the extent it has not already done so.

**Document Request No. 28.**  In the pre-hearing submission, Plaintiff and Gilbert indicate this discovery request is resolved.  Accordingly, Plaintiff's motion is denied as moot with respect to Document Request No. 28.

### 4.  Complaints & Grievances

As stated above, this category of information relates to the earlier discussion regarding the assertion of an *Ellerth-Faragher* affirmative defense, *see supra* Section VI.B, and encompasses Plaintiff's Document Requests Nos. 4, 13, 14, and 15 as well as

---

[12] It of course goes without saying that to the extent any *privileged* responsive documents exist, such documents shall be included in a privilege log produced in the ordinary course.

Interrogatory Nos. 8 and 9.  *See* Pl.'s Mem. in Supp. at 17-21.

**Document Request No. 4.**  Document Request No. 4 seeks "[a]ll documents and communications related to Gilbert's response to any complaint, concern, report of differential treatment, or request for tools, equipment, or support of any kind from Plaintiff or Doug Gatlin, including their formal charges of discrimination and relation."  Ex. B at 28 to Stratton Decl.  As best as this Court is able to tell, the parties' dispute is limited to production of responsive information regarding Gatlin.  For the reasons stated above, *see supra* Section VI.B, the assertion of an *Ellerth-Faragher* defense neither renders moot Rule 26(b)(1)'s fundamental precept that discovery be connected to the claims and defenses asserted nor does it open discovery up to any and all complaints of discrimination or differential treatment beyond the employment practices and classes at issue.  Plaintiff's motion is denied as to Document Request No. 4.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

**Document Request Nos. 13, 14, and 15 as well as Interrogatory No. 8.**  Document Request Nos. 13, 14, and 15 as well as Interrogatory No. 8 collectively seek information relating to complaints and grievances "regarding differential treatment, discrimination, or retaliation based on legally protected status or legally protected conduct" from 2010 to the present.  Ex. B at 35 to Stratton Decl.; *see* Ex. B at 35-36 to Stratton Decl.; Ex. A at 12-13 to Stratton Decl.  In the pre-hearing submission, Gilbert states that it has produced all responsive information from 2013 to the present for sex discrimination.

Plaintiff's claims concern sex/gender discrimination and retaliation with respect to sex/gender discrimination.  *See* Compl. ¶¶ 267-75.  The Court will grant Plaintiff's motion in part to the extent Gilbert has information responsive to Document Request Nos. 13, 14,

and 15 as well as Interrogatory No. 8 related to *retaliation* in connection with sex/gender discrimination for the period of 2013 to the present that has not yet been produced.  *See Escamilla*, 2011 WL 13243580, at *18.  Plaintiff's motion is otherwise denied as to Document Request Nos. 13, 14, 15  as well as Interrogatory No. 8 for the reasons stated above in Section VI.B.  *See also* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii).

**Interrogatory No. 9.**  Interrogatory No. 9 is directed at complaints made to Gilbert by Plaintiff and seeks information regarding "any complaint of any kind, report of differential treatment, or request for tools, equipment, or support of any kind made by Plaintiff."  Ex. A at 13 to Stratton Decl.  In the pre-hearing submission and at the hearing, it became evident that the parties' dispute centers around the applicable level of "management" with knowledge of such complaints.

The record before the Court provides little to no information on the hierarchical management structure of Gilbert or the job sites where Plaintiff worked.  The Complaint includes allegations regarding a Gilbert job superintendent named Dean Kaminski.  *See, e.g.*, Compl. ¶¶ 185, 189, 191-93, 222.  There is also an allegation that, in connection with the 2016 YMCA project, Plaintiff spoke with "Gilbert's Safety Director" regarding how she had been treated on a prior job.  Compl. ¶ 188.  The Court will limit Interrogatory No. 9 to the least-senior level of management encompassing both Kaminski and the "Safety Director" and above.

Accordingly, Plaintiff's motion is granted in part to the extent Gilbert has not already answered Interrogatory No. 9 based on the knowledge of the least-senior level of management encompassing both Kaminski and the "Safety Director" and above.

61

Plaintiff's motion is further granted in part to the extent Gilbert shall supplement its response to Interrogatory No. 9 to reflect its additional, agreed-upon inquiry as to whether management knew Plaintiff had made complaints about other employers prior to the filing of this lawsuit.  Plaintiff's motion is otherwise denied with respect to Interrogatory No. 9.

### 5.  Interrogatory No. 1

Interrogatory No. 1 seeks identification of "all persons with knowledge of information relating to the allegations in Plaintiff's Complaint in this matter or [Gilbert's] Answer." Ex. A at 3 to Stratton Decl.  In her memorandum, Plaintiff includes Interrogatory No. 1 in a category of "other deficiencies," but does not explain in her memorandum what is purportedly deficient about Gilbert's answer to Interrogatory No. 1.  *See* Pl.'s Mem. in Supp. at 22, 26-32.  Under Local Rule 37.1, a motion to compel must contain "a concise statement of why the disclosure, answer, response, production, or objection is insufficient, evasive, incomplete, or otherwise improper."  D. Minn. LR 37.1(d).  Plaintiff did not comply with this requirement in either the motion itself or her memorandum.  Such failure alone is grounds to deny her motion with respect to Interrogatory No. 1.

In the pre-hearing submission, Plaintiff indicated that the issue was the inclusion of phone numbers for the individuals Gilbert identified in response to Interrogatory No. 1.  According to Plaintiff, phone numbers were included in the definition of "identify" provided in the interrogatory instructions.[13]  During a meet-and-confer, Plaintiff requested the phone numbers and also asked Gilbert to describe the information possessed by Brent

---

[13] Plaintiff only supplied the Court with Gilbert's answers to her interrogatories, which do not contain Plaintiff's instructions.  *See generally* Ex. A to Stratton Decl.

Stifter, an individual Gilbert identified in response to Interrogatory No. 1.  Gilbert agreed

to look for the last-known phone numbers and inquire further regarding the information

possessed by Stifter.  As of the hearing, any last-known phone numbers had not yet been

produced.

The Court will grant Plaintiff's motion in part with respect to Interrogatory No. 1 to

the extent Gilbert has not supplemented its answer to include the last-known phone

numbers of the individuals identified and the information possessed by Stifter.  Plaintiff's

motion is otherwise denied.

### E.  Leave to Conduct Third-Party Discovery

In addition to compelling Summit and Gilbert to provide compensation data,

Plaintiff "requests permission to subpoena the Pipe Trade Services Minnesota for such

data." Pl.'s Mem. in Supp. at 29.  According to Plaintiff, it is necessary to subpoena this

information because Summit and Gilbert "have not provided complete compensation data."

Pl.'s Mem. in Supp. at 29.  The Court will deny Plaintiff's request for a modification of the

fact discovery deadline to subpoena Pipe Trade Services Minnesota.

First, the Court has granted Plaintiff's motion in part and ordered Summit to

produce, to the extent it has not already done so, data evidencing the total hours worked

and compensation of certain sprinkler fitters by month from January 1, 2014 through

December 31, 2017, broken down by earnings at regular pay and earnings at overtime or

holiday pay.  *See supra* Section VI.C.1 (Document Request No. 9 and Interrogatory No.

7).  Second, Gilbert had already produced payroll data going back to 2013.  *See supra*

Section VI.D.1 (Document Request No. 9 and Interrogatory No. 7).

Third, Plaintiff has not shown good cause for an extension of the fact discovery deadline to pursue this information. Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see, e.g.*, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006). "[T]he 'good-cause standard is not optional.'" *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). "The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements." *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (quotation omitted); *accord Sherman*, 532 F.3d at 716. "The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 581-82 (D. Minn. 1999) (quotation omitted); *see, e.g., Klein v. Affiliated Grp.*, No. 18-cv-949 (DWF/ECW), 2019 WL 246768, at *4 (D. Minn. Jan. 17, 2019); *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2013 WL 12141434, at *2 (D. Minn. May 15, 2013).

Based on the record before the Court, Plaintiff did not commence serving discovery until February 2021, approximately five months after the start of discovery. *See, e.g.*, Summit's Mem. in Opp'n at 2. And, while Plaintiff states that she "has been exchanging notices of discovery deficiencies and conferring[]in writing and via phone conference with both [Summit and Gilbert]," Stratton Decl. ¶ 8, the record before the Court reflects that Plaintiff did not earnestly pursue any purported deficiencies with Summit and Gilbert's discovery responses until less than two weeks of discovery remained. *See* Stratton Decl.

¶¶ 12-14; Ex. H to Stratton Decl. at 115-17; *see also* Decl. of Lisa Stratton ¶ 12, ECF No. 77-1; Ex. A to Stratton Decl. at 1-11, ECF No. 77-1.  Plaintiff repeatedly emphasizes that she is litigating against two defendants with greater resources.  Although the Court is not in the habit of inviting future motion practice, it was on Plaintiff to request relief from the Court and an extension of any applicable deadlines in a timely manner if needed.  Plaintiff failed to do so and, on this record, the Court cannot conclude that she was diligent in pursuing the information she now seeks.  No good cause having been shown, Plaintiff's request to extend the fact discovery deadline to permit additional third-party discovery is denied.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

### F.  Attorney Fees

Summit and Gilbert have both requested attorney fees in connection with responding to Plaintiff's motion.  Summit's Mem. in Opp'n at 21; Gilbert's Mem. in Opp'n at 10.  As stated above, *see supra* Section III.A.4.c, Rule 37(a)(5)(C) permits but does not require the payment of expenses when a motion has been granted in part and denied in part. The Court reiterates its earlier observation that, except with respect to the reasonable attorney fees and costs incurred by Summit and Gilbert in connection with responding to Plaintiff's "placeholder" motions, *see supra* Section III.B, it is this Court's view that any award of attorney fees and costs would have little if any positive effect, and would serve only to embolden further the recipient party, entrench the parties in their respective positions, and increase the costs of this litigation, making an award of fees unjust under the circumstances.  Accordingly, each party shall bear its own costs and attorney fees in connection with Plaintiff's motion to compel

# VII. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Summit's Motion to Compel Discovery, ECF No. 62 is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Gilbert's Motion to Compel Discovery, ECF No. 68, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

3. Plaintiff's Motion to Compel Discovery – Summit Fire Protection, ECF No. 73, is **DENIED WITHOUT PREJUDICE**.

4. Plaintiff's Motion to Compel Discovery – Gilbert Mechanical, ECF No. 74, is **DENIED WITHOUT PREJUDICE**.

5. **On or before March 1, 2022**, counsel for Summit and Gilbert shall file affidavits setting forth the attorney fees and costs incurred with responding to Plaintiff's motions to compel.

6. Plaintiff may file a written response to their affidavits **on or before March 15, 2022**.

7. Summit's Motion for Protective Order to Quash Plaintiff's Notice of Rule 30(b)(6) Deposition, ECF No. 91, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

8. Should Plaintiff wish to pursue a 30(b)(6) deposition, such deposition shall take place **no sooner than 35 days but within 60 days from the date of this Order** and "is limited to one day of 7 hours." Fed. R. Civ. P. 30(d)(1). **No later than 30 days before the deposition**, Plaintiff shall serve a revised 30(b)(6) deposition notice on Summit indicating on which of the narrowed topics she seeks to inquire.

9. Plaintiff's Motion to Compel Testimony and Documents from Non-Party William McManus, ECF No. 113, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

10. **Within 45 days from the date of this Order**, McManus shall appear for his deposition via videoconference. McManus shall reasonably cooperate with Plaintiff's counsel to schedule the deposition. Plaintiff shall serve an amended

subpoena consistent with the limitations imposed herein along with this Order on McManus.

11. Plaintiff's Motion to Compel Discovery from Summit Fire Protection Co. and Gilbert Mechanical Contractors, Inc., ECF No. 119, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

12. **Unless expressly subject to a different deadline as set forth above,** all supplementation ordered herein to the extent it has not already occurred shall be completed **within 30 days from the date of this Order**.

13. A Second Amendment to the Pretrial Scheduling Order shall issue.

14. All prior consistent orders remain in full force and effect.

15. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: February____11____, 2022 
_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Brinkman v. Sprinkler Fitters Local #417 et al.*
Case No. 19-cv-2981 (KMM/TNL)